30 C.C.P.A.(Patents)

## In re FISCHEL et al.
### Patent Appeal No. 4740.

Court of Customs and Patent Appeals.
May 18, 1943.

T. A. Hostetler, of Washington, D. C. (Stephen Cerstvik, of Bendix, N. J., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

The instant appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 11 to 28 inclusive of appellants' application for a patent relating to an "automatic control for aircraft and the like," presents only a question of law. Ten of appellants' claims were allowed.

Such facts as are presented in connection with the question of law involved are not in dispute. In view of this fact and the concessions made by the parties, it is not deemed necessary to set out typical claims or to discuss the references except as appears hereinafter.

The instant application of Fischel and Rieper is owned by the assignee of reissue patent Re. 21,770 to Fischel and Thiry. The claims of the instant application were rejected, generally speaking, upon the ground of double patenting and the doctrine of election (which doctrine will hereinafter be more fully stated). The rejection upon these grounds involved the question of the extension of the monopoly arising from the fact that the appealed claims, agreeable to a concession of appellants, are generic to the construction claimed in claims 7 and 8 of Fischel and Thiry patent No. 2,188,834, the original patent which was reissued as Re. 21,770.

In order to get the entire picture, it is necessary to recite to some extent the history of the applications and patents forming the basis of the rejection of the Patent Office tribunals as well as that of the application at bar. The application at bar, by Fischel and Rieper, Serial No. 230,120, filed September 15, 1938, is a continuation of an earlier application, Serial No. 728,644, filed June 2, 1934. These two applications were copending, and the application at bar is therefore entitled to the filing date of June 2, 1934, of the patent application. (It is observed that the present application is therefore not barred in any way by a British patent, No. 430,610, granted June 21, 1935, upon an application corresponding to the abandoned application Serial No. 728,644. The British patent will be hereinafter referred to.)

The Fischel and Thiry application (assigned to the assignee of the application at bar) was filed May 21, 1938. This application ripened into patent No. 2,188,834, on January 30, 1940, and included claims 7 and 8, which were generic to the subject-matter of the application now before the court. Appealed claims 27 and 28 are identical with said claims 7 and 8 of patent No. 2,188,834. It will be noted that the filing date of the application for that patent was more than two years after the issuance of the British patent.

On December 10, 1940, application was filed for the reissue of patent No. 2,188,834 omitting claims 7 and 8, and the reissue was allowed on April 15, 1941. It is stated by appellants, and apparently acquiesced in by the Solicitor for the Patent Office, that upon the instant record, claims 7 and 8 of the Fischel and Thiry patent No. 2,188,834 were invalid because of the British patent.

Appellants, by filing the instant application as a continuation of their earlier application, bring themselves within the two-year period so as to avoid the question of invalidity by reason of the issuance of the British patent.

In the decision of the Board of Appeals the following is found:

"All of the claims stand rejected on the ground of double patenting, two claims of somewhat similar scope having been allowed in the patent to Fischel et al No. 2,188,834, while the present application was pending. Both the patent and the present application are owned by the same assignee and there is no contention that claims 7 and 8 of the Fischel et al patent are not generic to the construction here claimed. There is also no contention that the claims here on appeal are not generic to the Fischel et al patented construction.

"It is appellants' contention that claims 7 and 8 were introduced into the patented specification by mistake and that they are invalid in that application. The patent has been reissued on an application filed December 10, 1940, without claims 7 and 8. However, from the date of the grant of the original patent, January 30, 1940, these claims stood in the original patent and gave to the assignees of the patent a monopoly of the subject matter covered thereby. It is the examiner's view that to again grant claims of similar scope in the present application would have the effect of extend-

ing this monopoly beyond the statutory period provided by law.

"It is appellants' contention that he never had an actual monopoly of the scope of claims 7 and 8 of the patent because of the fact that the patent was invalid on its face as to these claims because of a bar in the shape of a British patent corresponding to the present application published and granted more than two years before the filing date of the application on which the Fischel et al patent 2,188,834 was granted.

"The fact that there may have been an outstanding bar against these claims would not, in our opinion, render the patent invalid on its face. The invalidity of the patent as to these claims was a matter to be established by proof and would not show on the face of the patent. The earlier patent in this respect is no different than others which may have claims which are eventually held invalid. Prior to such a holding, the claims are valid and suit may be brought for infringement thereof. To this extent the patentees have a monopoly. Like all monopolies of similar character, it may be defeated but until actually defeated, there is a prima facie monopoly rather than prima facie invalidity, as is urged in appellants' behalf.

"Under the circumstances, it seems to us that the doctrine of the case of In re Dunbar [51 App.D.C. 251], 278 F. 334, applies. Cases of similar import are In re Mann et al., 47 F.2d 370 [18 C.C.P.A., Patents, 1020], and Haight v. Nell, 1927 C.D. 4.

"In the brief several cases have been referred to having to do with the question of double patenting in which invalidity of an earlier patent has been held to avoid the defense of double patenting. Apparently in these cases the earlier patent as a whole was invalid rather than the claims thereof, and it does not definitely appear that in the later patent claims were presented corresponding in substance to claims in the earlier patent. This clearly could not have been the case where the earlier patents were design patents. However, it is our view, as above stated, that the present situation is controlled by the Dunbar and similar decisions cited, and the position taken by the examiner is therefore believed to be sound."

Appellants, in this court, contend that claims 7 and 8 of the Fischel and Thiry patent No. 2,188,834 were void ab initio in that patent by operation of law and that since those claims were deleted from the reissue as soon as the error was discovered, the granting of the instant appealed claims would not amount to double patenting or to an extension of a monopoly covered thereby beyond the statutory period.

The Solicitor for the Patent Office, in this court, states that while the examiner and the Board of Appeals both used the expression "double patenting" as a basis for rejection, they used the term in a broad sense, and that the real basis of the holding was that as the common assignee had elected to take out a patent containing generic claims, the assignee is not now entitled to shift the election to the present application.

It will be noted, supra, that the board said: "Under the circumstances, it seems to us that the doctrine of the case of In re Dunbar [51 App.D.C. 251], 278 F. 334 applies. Cases of similar import are In re Mann et al., 47 F.2d 370 [18 C.C.P.A., Patents, 1020], and Haight v. Nell, 1927 C.D. 4."

While this is all that was said in the decision of the board which might directly involve the doctrine of election, it seems clear that the board relied upon the doctrine of those cases at least in part for its holding in the instant case.

It is our view that the holding of the board was to the effect that the common assignee of the two involved patent applications, having elected to take out broad claims to the invention here involved in the Fischel and Thiry patent No. 2,188,834, waived any right to be granted a patent to Fischel and Rieper containing claims covering the subject-matter disclosed in the patent, and that having waived this right, it is now barred from claiming it in the manner stated. We think this holding of the board is supported by the authorities cited by it and by other authorities to which we shall hereinafter refer.

In Re Dunbar, 51 App.D.C. 251, 278 F. 334 (which cites no supporting authority), a decision by the Court of Appeals of the District of Columbia (now the United States Court of Appeals for the District of Columbia), it was held, quoting from the syllabus: "Where two applicants each assigned their copending applications to the same assignee by an assignment which left no interest in the applicant, the election of the assignee to take the patent on one application, which contained narrow claims reading on the disclosure in the other ap-

plication, is binding on him, and precludes his right to issuance of patent on the other application, containing broader claims covering the same features."

And from the decision we quote the following: " * * * To grant these claims to the assignee, after the assignee, by its own election, had accepted the Dyson patent, would be, as held by the Commissioner, a clear extension of the monopoly. * * * "

To the same effect is a decision of this court in a case in many respects similar to the Dunbar case and also to the case at bar: In re Mann and Koppelman, 47 F.2d 370, 371, 18 C.C.P.A., Patents, 1020. In view of the pertinency of the language there used to the instant issue and in order that a statement of the facts there involved may appear, we quote extensively from it:

"It appears that appellants' application here in issue was filed on October 21, 1921. On April 15, 1922, Koppelman, one of the appellants here, and one Cooper filed a joint application which resulted in the issue of said patent, 1,429,207, to Koppelman and Cooper on September 12, 1922, on a division of that application which was filed July 17, 1922.

"It appears in the caption of the patent to Koppelman and Cooper, in the record, that it was issued to 'Morris Koppelman and Simon Cooper of Brooklyn, New York, Assignors of one-half to said Koppelman, and one-half to Leon Mann, of New York, N. Y.' Therefore, the record shows that, at the date of issue of said patent, it was owned by the appellants here, through assignment to them from Koppelman and Cooper previous thereto.

"Under this state of facts it is obvious that no interference should be declared between the applications of Koppelman and Cooper and of appellants because there were no adverse interests, the beneficiaries of both applications being the same parties. In so far as both applications covered the same invention, and in so far as the disclosures in each specification show claim by the respective applicants of being the first inventors thereof, since no interference could properly be declared because of lack of adverse interests, it became a matter of election by appellants whether they would take out the patent as original inventors upon their application, or, as assignees of Koppelman and Cooper, upon the application filed by the latter. Having elected to take out a patent upon the application of Koppelman and Cooper, it was in legal effect a concession of priority of invention in Koppelman and Cooper and the same invention disclosed in the two applications, and this is true, irrespective of the claims made in the Koppelman and Cooper patent as distinguished from the disclosure of their application. There cannot be two first inventors of the same invention, and, if Koppelman and Cooper were the first inventors, it is obvious that Mann and Koppelman could not be the first inventors. Therefore, in so far as both applications disclose the same invention, one application claiming that Koppelman and Cooper were the first inventors, and in the other Mann and Koppelman claiming to be the first inventors of the invention disclosed in the specifications of the two applications, appellants by their election have conceded priority of invention to Koppelman and Cooper, and they cannot now make any claims upon the application before us that could have been made upon the Koppelman and Cooper disclosure."

This court there cited the Dunbar case, supra, and the case of Haight v. Nell, 354 O.G. 247, 1927 C.D. 4. The Haight case seems also to be in point on the instant issue. We quote from its syllabus:

"Where the common assignee elected to take out a patent to D. and P. as joint inventors, the assignee was thereafter estopped to make a claim in a sole application of D. which was not patentably distinguished from what was covered by the claims of D. and P.

"Where the invention sought to be covered by the claim in the application of D. was not patentable over claims 1 and 2 of the H. patent or claim 5 of the S. patent, *Held*, that the common assignee having elected to patent these claims in these already-issued patents it could not prolong its monopoly by obtaining similar protection in a later patent to D."

It will be noticed that all three of the above cases were based upon the doctrine of election and that said doctrine in those cases was said to involve the question of *extension of the monopoly*. Although appellants do not attempt to distinguish between the various holdings of the courts with respect to the relation of the subjects of extension of monopoly, double patenting, and waiver by election, they do contend that the Dunbar case is not in point for the reason that in their view there would be no extension of the monop-

oly or double patenting in the instant case because of the fact that claims 7 and 8 of the Fischel and Thiry patent were void ab initio and were surrendered and therefore not in a patent at the time of rejection of the instant claims. They also seek to avoid the effect of the application of the doctrine of election as there applied for the reason that, as they contend, claims 7 and 8 were inserted in the Fischel and Thiry patent through inadvertence, accident, or mistake, and that therefore the assignee made no deliberate election. Both applications were owned by the common assignee. It elected to take out the broad invention in the Fischel and Thiry patent and is bound thereby. It cannot now, in view of the facts of this case, avoid the effect of the election and the consequent waiver of the right to take out the instant subject-matter in the instant application by contending that it was a mistake. To hold with appellants on this phase of the case would be, in our judgment, to lend hopeless confusion to the administration of the patent laws when questions like that at bar are presented to the Patent Office tribunals.

Appellants' contention with regard to claims 7 and 8 being void ab initio makes it necessary for us to consider whether or not there would be an extension of the monopoly, under the facts disclosed by the instant record, by allowance of the appealed claims. There has been much confusion on the question of double patenting. Most of the court decisions on the subject turn upon the question as to whether the monopoly would be extended, and some of them in part are based upon the proposition that there cannot be two valid patents for the same invention. Some of the authorities, which we do not feel called upon to discuss here, either state or imply that double patenting (and, in some instances, extension of monopoly) does not prevail where one of the patents is surrendered or where one of them is invalid ab initio.

■ We think the true doctrine of election in patent cases is grounded upon one or more of three fundamental propositions. First, the application of the doctrine prevents two patents being issued for the same invention. Second, it prevents an avoidance of the determination of priority. Third, it prevents an extension of the monopoly.

The first-named fundamental principle upon which the doctrine is grounded does not apply in the instant case for the reason that the existence of two patents is not in contemplation.

We think the second ground—avoidance of the determination of priority—is applicable in the instant case in determining the correctness of applying the doctrine of election. Appellants' assignee, by taking out the broad claims to the invention in the patent, conceded priority of invention therein disclosed to Fischel and Thiry. Having made such concession, it cannot now have a valid patent containing the same subject-matter in another application. This is said irrespective of any question of invalidity of claims 7 and 8 in the Fischel and Thiry patent, as will be more fully discussed hereinafter.

As to the third basis for the application of the doctrine—that of extension of the monopoly—we find the decisions of the courts in considerable confusion. For instance, some of the decisions relied upon by appellants (which we do not regard as controlling) expressly or impliedly hold, under circumstances considerably different from those at bar, that the monopoly would not be extended if one of the patents had been held invalid. It must be remembered that in the instant case claims 7 and 8 of the Fischel and Thiry patent were admittedly invalid in the patent (not invalid on the face of the patent, but invalid in the light of admitted facts considered by the tribunals below).

In concluding that appellants are bound by their assignee's election to take out the broad claims 7 and 8 in the Fischel and Thiry patent under the circumstances stated and are now barred from claiming in the instant application the same or narrower subject-matter disclosed in said patent, we are influenced by a consideration of the fact that the assignee's conduct conceded priority of invention to Fischel and Thiry and of the further fact that to allow the instant claims would be to extend the monopoly which the assignee has enjoyed in the subject-matter embraced in said claims 7 and 8 in the Fischel and Thiry patent, regardless of the said admitted invalidity.

We think the law applicable to the question of extension of the monopoly, under circumstances similar to those involved here, was well-stated by Judge Archbald in the case of Williams Calk Co. v. Neverslip Mfg. Co., C.C., 136 F. 210, 212, affirmed in Williams Calk Co. v. Kemmerer, 3 Cir., 145 F. 928. There an inventor took

out a design patent for a horseshoe calk which, admittedly, was not the proper subject-matter for a design patent. He later took out a so-called mechanical patent for the same subject-matter as that of the design patent, and this second patent was held void upon the ground that, notwithstanding the invalidity of the design patent, the patentee had enjoyed a "nominal monopoly" in the design patent. The court said:

" * * * It is true that in the present instance, as we shall presently see, the design patent is itself invalid, not being within the purview of the law; but that does not change the result. Not only has the patentee, by means of it, enjoyed a nominal, and until now an apparently unquestioned monopoly, with all the benefits accruing therefrom, but it was not open to him to set himself right for a mistake which he had made in the character of the patent by taking out another and different one for substantially the same thing. Whether this could have been accomplished by a surrender and reissue I will not undertake to say."

The Patent Office tribunals in the instant case, while tacitly admitting the invalidity of claims 7 and 8 in the Fischel and Thiry patent, held that such invalidity did not appear on the face of the patent and in the absence of a holding that they were invalid or before they were surrendered, there was a prima facie monopoly in appellants' assignee of the subject-matter covered by said claims. The board pointed out that suit could have been brought upon the claims and that the invalidity was a matter which had to be proved and determined. We concur in this viewpoint of the board and conclude that appellants' assignee enjoyed, for about fifteen months, a prima facie monopoly of the subject-matter involved in said broad claims 7 and 8, and that to allow the instant claims would be an extension of monopoly.

While the facts in Re Albert Hargraves, 53 F.2d 900, 19 C.C.P.A., Patents, 784, differed in some respects from the facts in the instant case, it was there held that Hargraves, having taken out a design patent on the tread of an automobile tire, would have his monopoly extended if he were later granted a patent on the same "indistinguishable" inventive idea in his application for a mechanical patent. This was said notwithstanding the fact that in that instance it would seem obvious that the design patent was invalid on its face.

An exhaustive discussion involving the exact question presented by this appeal and related subject-matter is found in Stringham's volume on Double Patenting, beginning at section 2805. The author's views on the instant question seem to be in harmony with our views herein expressed.

The Solicitor for the Patent Office has cited the decision of this court in Re Willoughby, 88 F.2d 482, 484, 24 C.C.P.A., Patents, 1033. There we announced, on the facts of that case, that double patenting was not involved but said: "As we view the case, the broad question before us, upon the record presented, is whether the common assignee, having elected to take patent upon the Field (the junior) application, is now entitled to receive a patent upon claims in the Willoughby (the senior) application, the subject-matter of which claims was disclosed but not claimed in the same, or substantially the same, phraseology in the patent."

We there held against the contentions of the appellant and affirmed the decision of the Board of Appeals rejecting the there-involved claims on the ground of election.

In the instant case our conclusion is that the proper basis for the application of the doctrine of election by the common assignee of two applications, to wit: extension of monopoly and concession of priority, appears from the instant facts and requires the application of the doctrine. We therefore hold that appellants' assignee, having elected to take out in the Fischel and Thiry patent the broad subject-matter here involved, waived the right to claim it and the narrower subject-matter also involved here (all disclosed in said patent) in the instant application and, for the reasons stated, is now barred from having granted to appellants the invention defined by the claims on appeal.

The decision of the Board of Appeals is affirmed.

Affirmed.