**Application of BECK et al.**
**Patent Appeal No. 5135.**

Court of Customs and Patent Appeals.
May 7, 1946.

Samuel Z. Gordon, of Washington, D. C., for appellants.

John Boyle, of New York City, for Alien Property Custodian.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The Board of Appeals of the United States Patent Office affirmed the action of the Primary Examiner in finally rejecting claims 14 to 18, inclusive, and claim 24 of appellants' application for a patent on a magnesium base alloy. The examiner had also rejected claims 21, 22, 23 and 25, but the board reversed his decision as to those claims and allowed the same and the question of their patentability is not before us.

Appellants have appealed from the decision of the board affirming that of the examiner in rejecting claims 14 to 18, inclusive, and claim 24. In this court appellants' brief states, "claim 24 is withdrawn," which leaves for consideration only claims 14 to 18, inclusive.

Claim 14 is regarded as illustrative and reads as follows:

"14. A cast article of a magnesium base alloy, said alloy containing between about 0.1 and about 2.0% of cerium and between about 0.5 and about 12.0% of zinc and having been annealed at a temperature between about 120° and about 250° C., the alloy being characterized by greater

freedom from micro-shrinkage than a magnesium base alloy of the same composition but not containing said amount of cerium."

In appellants' brief, under the caption, "Questions Presented," the following is stated:

"Two broad questions are presented by this appeal. The first is to what extent the Altwicker patent may legally be used as a reference in view of the common ownership of the Altwicker patent and appellant's application at the time they were copending in the Patent Office. * * *

"The second question at issue is whether, assuming that the disclosure of a copending patent may legally be a bar to the common owner, the Altwicker patent discloses the same invention as appellant's."

The invention is briefly described in the brief of the Solicitor for the Patent Office as follows:

"The application here involved discloses a magnesium base alloy containing between 0.1 and 2% of cerium and between 0.5 and 12% of zinc. It also discloses the heat treatment of such alloys at a temperature such as 515° C. and annealing at 175° C."

The rejection by the examiner of the claims before him was on the ground that they were not patentable in view of the reference, Altwicker et al., 2,221,319, November 12, 1940, and some of the claims were rejected by combining the Altwicker et al. patent with the French patent to Haughton, 810,610, March 24, 1937.

In a supplemental statement made after the application had been remanded to the examiner in view of certain papers filed on behalf of the Alien Property Custodian, who prosecuted the instant application and represents the applicants here, the examiner adhered to his original rejection of the claims. The supplemental statement was prompted by the fact that the papers filed presented evidence that the application of the patent to Altwicker et al. (which patent comprises the principal reference) and the instant application were copending at the time of the final rejection of the latter and were at that time both owned by the same party. The appellants there contended, and here contend, that the Altwicker patent should not be used as a reference in view of the common ownership of the two applications, urging that they had the right of election as to which application should contain the instant disputed matter, and also urging that, in any event, the said patent could only be used as a reference for what it claimed and not for what it disclosed.

The Board of Appeals in its decision held that the evidence disclosed by the affidavits submitted by appellants to the effect that during the last five months of pendency of the patent application title to the instant application was in the same company owning the patent did not require a holding that the Altwicker patent could not be properly used as a reference. It pointed out that there was no assignment of record of the instant application. (An assignment was subsequently recorded.) We find it unnecessary to discuss the effect of the assignment on the record because we disagree with the contention of the appellants that under the circumstances of this case it is improper to regard the Altwicker patent as a reference.

On the controlling issue in the case, and in applying the references, the board stated:

"We have been unable to find in the decisions any indication that the common assignee obtains any right as against the public by virtue of common ownership which he would not have had in the absence of common ownership. Ordinarily when claims of an application are rejected on the *unclaimed disclosure* of a patent of prior date, the only way that the patent can be overcome is by proceedings under Rule 75. Just why an inventor other than the patentee should find himself relieved of Rule 75 proceedings merely because he had, during the pendency of the patent application, assigned his application to the owner of the patent, is not apparent, and our attention has not been called to any such ruling. It is not seen how an inventor can assign any greater rights than he acquired by the filing of his application.

"Applying this reasoning to the present case we see no reason to question the soundness of the examiner's position in taking the *disclosure* of the patent as the reference. [Italics quoted.]

"The authorities we have consulted are as follows: Rule 94; Schreiber v. Bauer, 1919 C.D. 4; Tunstall v. White, 1926 C.D. 19; Haight v. Nell, 1927 C.D. 4; Chillas v. Weisberg, 1928 C.D. 24; In re Dunbar, 51 App.D.C. 251, 278 F. 334, 1922 C.D. 105; Ex parte Clawson, 1929 C.D. 67; In re Mann et al., 47 F.2d 370, 18 C.C.P.A. (Patents) 1020, 1931 C.D. 252; In re Howard, 53 F.2d 896, 19 C.C.P.A. (Patents) 759, 1932 C.D. 73; In re Willoughby, 88 F.2d 482, 24 C.C.P.A. (Patents) 1033, 1937 C.D. 427; and In re Allen, 1940 C.D. 598, 112 F.2d 840.

"Altwicker discloses an alloy which *contains* magnesium, manganese, cerium, zinc and aluminum. The instant application, among its various disclosures of alloys would include an alloy having the five metals above mentioned and in addition one or more of the following: cadmium, tin, and silver. [Italics quoted.]

"Claims 17 and 18 read in terms on the Altwicker disclosure. In claim 18 there is an indirect reference to aluminum and silicon which have not been included in the positive recital of components. The reference is 'the aluminum content * * * being less than * * *' and the same type of reference to silicon is made. This claim does not necessitate the presence of either material; so both are disregarded.

* * * * *

"Claims 14, 15, and 16 are for a cast article of a specified alloy, which has been annealed within a specified temperature range, and has certain properties. The ingredients of the alloy and their proportions fall within the disclosure of Altwicker. The examiner has cited a French patent which shows a heat treatment within the claimed range of a magnesium base, cerium-containing alloy, of somewhat different composition. Applicant's argument emphasizes the difference of the compositions but does not controvert the examiner's position that it is notoriously old to heat treat metals having a predominance of magnesium. We are of the opinion that the examiner's position is sound that these claims lack invention over the art.

"Commenting on the examiner's supplemental statement we note that claim 1 of the Altwicker patent recites the four ingredients of Example 6; that claims 1 and 2 are closed as to composition, and that claim 3 is open, reciting that the alloy *contains* cerium and manganese in addition to magnesium. This does not exclude the alloys of the appealed claims. If one were to rely solely on the claims of the patent, certain of the appealed claims do not draw a clear line of division with the claims of the patent. The need for drawing a clear line that would not require speculation is pointed out In re Willoughby, cited above." [Italics quoted.]

The Altwicker patent, among its various disclosures, sets out in example No. 6 an alloy composed of pure magnesium with 2% manganese, 0.4% cerium and 0.6% zinc.

The French patent to Haughton discloses the improvement of magnesium alloys containing cerium by heat treatment at 400° C. and tempering at 130 to 220° C.

It was the view of the board, as it was that of the examiner, that claims 17 and 18 "read in terms on the Altwicker disclosure." These two claims are for a base casting alloy, while claims 14, 15 and 16 are for a cast article of a specified alloy which has been annealed within a certain temperature range. The board pointed out that the ingredients of the alloy and their proportions fall within the disclosure of Altwicker and that the French patent "shows a heat treatment within the claimed range of a magnesium base."

The examiner and the board pointed out that it was "notoriously old" to heat treat metals having a predominance of magnesium.

Claim 15 adds to claim 14 the statement that the alloy, prior to annealing, is heated to a temperature "below but in the vicinity of the solidus point," which, according to the application, is "about 515° C." The French patent discloses heating to about

400° C. prior to the heat treating or annealing at the lower temperature. There is nothing in the record which shows the difference between 400° C. and 515° C. as being critical.

Claim 16, while similar to 15, merely states that the annealing period is longer than the heating period. The French patent meets this by stating that the heating period is 400° C. for fifteen minutes while the annealing period is "one or more days."

The first and most important question involved is whether or not the contentions of appellants either that the Altwicker patent is not a proper reference (no affidavit under Rule 75 of the Rules of Practice in the United States Patent Office, 35 U.S.C.A.Appendix, was filed) or that the Altwicker patent can only be considered for what it claims rather than for what it discloses are sound. We are in entire agreement with the holding of the board in this respect.

The application involved in the patent was filed October 22, 1938, the patent issuing on November 12, 1940, while the instant application, which as far as the record discloses was an independent invention (the inventors in the application being different parties from those in the patent), was filed March 2, 1940. The two applications were copending for about eight months before the issuance of the patent. The affidavit and record disclose that the instant application was assigned to the common assignee, the Magnesium Development Corporation, on October 23, 1940, about three weeks before the issuance of the patent.

 We are in agreement with the holding of the board that the Altwicker patent is not only a proper reference for what it claims but for what it discloses and the mere fact that the two inventors, having a common assignee, cannot have an interference under the rules of the Patent Office does not change the situation. Patents must be issued to the first inventor. The record clearly indicates that any patentable subject matter involved in the appealed claims was first invented by Altwicker. The rule of election as to which application will carry the claims in an inter-ference has nothing to do with the question.

Neither is this a case where there is a voluntary division or a requirement for division, and althought appellants have stated that the subject matter of the patent claims and of the appealed claims is "divisable" they have not argued here that they are entitled to have the instant application regarded as a true division of the application which has developed into the patent.

We think the law applicable to this situation is somewhat clarified by the reasoning in the decisions in Chillas v. Weisberg, 1928 C.D. 24, 370 O.G. 3, and in In re Dunbar, 51 App.D.C. 251, 278 F. 334, 1922 C.D. 105.

 It would be in contravention of the statute to allow the appealed claims since under Section 4886, R.S., 35 U.S.C. A. § 31, a patent can only be granted where the patent sought is for an invention which had not previously been known or used by others. Upon the instant record, Altwicker et al. knew about the invention before appellants' filing date. They said nothing about annealing, but this was admittedly old and sufficiently disclosed in the Haughton patent.

 In The Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651, this subject matter is treated in a way that we think is convincing of the correctness of the board's position. This case supports the conclusion that when a patent is issued it constitutes evidence that everything disclosed by it was known by others in this country at least as early as the filing date of the application on which the patent issued. Another applicant can, under Rule 75, get behind such filing date, but no such effort was made here and the mere fact that there was copendency in the applications and that they finally found common ownership does not change the situation.

The decision of the Board of Appeals as to appealed claims 14 to 18, inclusive, is affirmed for reasons assigned by the board, and the appeal is dismissed as to claim 24.

Affirmed.