Frank L. PIERCE and AMP, Incorporated, Appellants,

v.

Robert C. WATSON, Commissioner of Patents, Appellee.

No. 15164.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 12, 1960.

Decided Feb. 25, 1960.

Mr. Daniel L. Morris, New York City, with whom Messrs. Roger L. Hansel, Washington, D. C., Truman S. Safford, New York City, Marshall M. Holcombe, Harrisburg, Pa., and William Hintze, Harrisburg, Pa., were on the brief, for appellants.

Mr. Joseph Schimmel, Atty., United States Patent Office, with whom Mr. Clarence W. Moore, Sol., United States Patent Office, was on the brief, for appellee.

Before WASHINGTON, DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

Appellant herein, AMP, Inc., for itself as assignee and in behalf of Pierce, brought suit pursuant to 35 U.S.C. § 145, seeking authorization for the Commissioner to issue a patent on Pierce's assigned application hereinafter described. After entering findings of fact and conclusions of law in favor of the Commissioner, the District Judge dismissed the action, and this appeal followed.

Macy, claiming to have invented an electrical connector, swore to and filed his application dated December 23, 1946, which was assigned to AMP, Inc. Patent No. 2,600,012 was issued to the latter on June 10, 1952. Macy had disclosed but had not claimed in his described Figure 19 the application of an F-crimp through a plastic sleeve. Without more, the Patent Office argues, the unclaimed subject matter passed into the public domain one year after the issue date.

Pierce on August 19, 1948, swore to and filed application No. 46967 claiming that *he* was the inventor of the unclaimed subject matter disclosed by Macy's described Figure 19. AMP, Inc. claims in essence that as co-assignee of Macy and Pierce, it was entitled to decide which of its two assignors was the prior inventor, and that the Patent Office was bound by its election.

The Macy patent having been issued on June 10, 1952, was cited by the examiner on January 16, 1953. He noted that Pierce's claims were fully met by Macy's described Figure 19. Macy thus became a reference for everything shown as of his filing date in 1946 [1] unless Pierce or his assignee could "swear back" of Macy.[2] On June 22, 1953, AMP, Inc., in response to the Office action of January 16, 1953, for the first time disclosed itself as assignee of Pierce. It then argued that the subject matter of Figure 19 was "clearly not claimed" in Macy and had been invented by Pierce. It urged that as common assignee, it was entitled to its patent on what Macy had claimed and entitled further to a patent on what Pierce had claimed. The Patent Office Tribunals in 1956 ruled adversely to AMP, Inc. The latter then could have pursued an appeal to the Court of Cus-

---

1. Alexander Milburn Co. v. Davis-Bournonville Co., 1926, 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651. Only the first inventor is entitled to a patent. Id.

2. Such procedure is authorized by Patent Office Rule 131 and, in certain situations, by Rule 132, 35 U.S.C.Appendix. 37 C.F.R. §§ 1.131 and 1.132, respectively (1949).

toms and Patent Appeals pursuant to 28 U.S.C. § 1542 (1958). It there could have secured a ruling as to whether or not there had been adequate compliance with the appropriately applicable rule. Instead, AMP, Incorporated, sought relief in the District Court in a trial *de novo*.

We have pointed out that a Patent Office finding as to priority of invention must be accepted as controlling except that "if the decision of the Patent Office is not warranted on the evidence before it, or if the new evidence reaches the necessary standard, the District Court may rule as the totality of the evidence may require." [3]

At the trial it clearly appeared that the Macy and Pierce applications were co-pending from 1948 to 1952. Both had been prepared by Mr. Safford, a patent attorney representing AMP, Inc. Although Patent Office Rule 79 authorizes a common assignee to protect itself in a situation such as this, AMP, Inc. filed no amendment to the Macy application.[4] There was no insertion in the Macy application that Pierce—not Macy—was the inventor of the subject matter of the described Figure 19. When questioned on this aspect, the witness replied: "I did not do that. I should have done it. I overlooked it. As I say, I usually do it by amendment later."

The record seems to us clearly to show that the Patent Office and the District Court did not err when they concluded that Pierce had not established himself as the first inventor.[5] We perceive no ground pertinent to the issue here upon which the co-assignee—simply by virtue of that status—can obtain a greater right as against the public than it would possess in the absence of common ownership.[6]

Macy testified that it never occurred to him to have an F-crimp through an outer plastic sleeve, and that he first learned of the concept from Mr. Safford while the latter was preparing the Macy application.[7]

Mr. Safford testified that he received the plastic sleeve concept from Pierce in October, 1946. He discussed the Pierce disclosure thereafter with the president of AMP, Inc., with Pierce and one of the company engineers. Under examination by trial counsel the following evolved:

"Q. Can you explain the delay, Mr. Safford, between the disclosure by Mr. Pierce of the F-crimp with the plastic sleeve and the filing of the Pierce application in August of 1948?

"A. Yes, it was decided at this conference that I mentioned that this was something important enough that we should protect our priority on it and it was to be disclosed in this Macy application which we were going to have to file so that we would have a record date on it, and *it was to be covered by broad claims*.

"Q. What do you mean by that? Do you mean by that that the Pierce invention incorporated also the Macy invention?

"A. I was directed to make sure that *the claims on the Macy inven-*

3. Esso Standard Oil Co. v. Sun Oil Co., 97 U.S.App.D.C. 154, 159, 229 F.2d 37, 42, certiorari denied 1956, 351 U.S. 973, 76 S.Ct. 1027, 100 L.Ed. 1491.

4. If Macy and Pierce were co-inventors, of course, an application could have been filed under 35 U.S.C.A. § 116.

5. Cases arising on direct appeal from the Patent Office are not inconsistent with this conclusion. See, e. g., In re Beck, 1946, 155 F.2d 398, 33 CCPA 1060; cf. In re Dunbar, 1922, 278 F. 334, 51 App. D.C. 251.

6. For comparable cases arising on direct appeal, see generally, In re Ward, 1956, 236 F.2d 428, 43 CCPA 1007; In re Keim, 1956, 229 F.2d 466, 43 CCPA 784; In re Fischel, 1943, 136 F.2d 254, 30 C.C.P.A. 1085, and cases cited.

7. In December, 1957, Macy sought and AMP, Inc. received a reissue of Patent No. 2,600,012. To accompany his reissue application, he filed an affidavit in which he again claimed to be first inventor of described Figure 19.

*tion* did not have any unnecessary limitations which would exclude the application of the Macy invention where there was a plastic sleeve on it. The question of whether to file an application specifically on the Pierce application [*sic*] had to go over because the corporation was then small. It was making a great many inventions and it couldn't file on all of them at that time." (Emphasis added.)

He testified that Figure 19 of the Macy patent was Mr. Pierce's invention. "I put it *in Macy's application* because I believed that it was an improvement that was embodied in the best embodiment of his invention then known to us. *I filed both applications, not for the inventors, but for the assignee;* and I interpreted that to mean the best embodiment known to the assignee, since he was an actual party who filed the application." (Emphasis added.)

It seems clear that the co-assignee had exercised its claimed right "to select the application in which the claims to the subject matter common to several applications should be placed." Macy took only what he claimed.[8]

The trial judge found that the Pierce application[9] did not "define novel subject matter in view of the disclosure in Figure 19 and the corresponding description in the specification relating thereto of the patent to Macy." He concluded that the Pierce claims are unpatentable.[10] We agree.

Affirmed.

8. Cf. discussion in Ex parte Lindeman and Youngs, 107 U.S.P.Q. 331 (Bd.App.1955) and compare with Ex parte Coss, 95 U.S. P.Q. 333 (Bd.App.1952). In Ex parte Lemieux, 115 U.S.P.Q. 148 (Bd.App. 1957), there was no interferant or other adverse party nor was there evidence of invention by anyone else prior to the applicant's filing date.

9. No affidavit by Pierce had been filed in the Patent Office proceeding other than his conventional affidavit in support of his 1948 application. He did not appear as

a witness at the trial. It was testified, however, that an AMP, Inc. atttorney had called Pierce in 1954 with a view to the procurement of a Rule 131 affidavit. Pierce did not remember when he made the invention or whether there were any records. He had made samples, he recalled. Diligent search yielded neither records nor samples. Cf. In re Strain, 1951, 187 F.2d 737, 741–742, 38 CCPA 933, 938–939.

