**COMMERCIAL SOLVENTS CORPORA-
TION, Plaintiff,**

v.

**Robert C. WATSON, Commissioner of
Patents, Defendant.**

**Civ. A. No. 1186.**

United States District Court
District of Columbia.

Nov. 4, 1960.

———◆———

Roger T. McLean, New York City, Arthur L. Lukens, Terre Haute, Ind., and Henry W. Foulds, Jr., Washington, D. C., for plaintiff.

Clarence W. Moore, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is an action against the Commissioner of Patents to secure a patent pursuant to application numbered 596,153, filed on July 6, 1956, in behalf of Francis W. Chornock and assigned to the plaintiff. The application was rejected by the Patent Office on the two grounds hereafter discussed.

The alleged invention is in the field of medicines and drugs. Specifically, the application seeks a patent on a composition in the group of antibiotics. The particular composition is known as Zinc Bacitracin. Zinc Bacitracin is an antibiotic known as bacitracin to which an atom of zinc has been added in each molecule.

The Patent Office rejected the application, first, on the ground of double patenting; and, second, for lack of invention. Each of these defenses will be discussed separately. The defense of double patenting arises out of the following facts. On August 28, 1957, Patent No. 2,803,582 was issued to Edward B. Hodge and Grant J. Lafferty as assignors to the plaintiff in this action. Consequently, the plaintiff owned both the Hodge patent and the present application. The claims of the Hodge patent likewise covered a composition. The specific composition was a solid edible matrix containing the zinc salts of bacitracin. It is contended on behalf of the Patent Office that there is no patentable difference between the Hodge patent and the invention described in the present application, and that consequently to grant the present application would prolong the plaintiff's monopoly beyond the term prescribed by the patent laws. It is this contingency that is sometimes referred to in the patent law as double patenting.

That double patenting may not be permitted is well established. The Supreme Court in Miller v. Eagle Manufacturing Co., 151 U.S. 186, 197, 14 S.Ct. 310, 314, 38 L.Ed. 121, stated that if two patents "should be considered as covering the same invention, then the later must be declared void, under the well-settled rule that two valid patents for the same invention cannot be granted either to the same or to a different party." Again, the

Court stated in that opinion, 151 U.S. at page 198, 14 S.Ct. at page 314, "No patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ."

This principle was established in this Circuit in the leading case of In re Dunbar, 51 App.D.C. 251, 252; 278 F. 334. That case involved two applications for two different patents, both applications being assigned to the same person. One of the applications was granted. It contained narrow claims. The other application contained broader claims, but it was held that the second application should, nevertheless, be rejected on the ground that by taking out the first patent an election was made by the assignee, and to grant the second patent would be a clear extension of the monopoly.

This principle has been followed in a great many other cases. In re Fischel, 30 CCPA 1085, 136 F.2d 254; Application of Ward, 43 CCPA 1007, 236 F.2d 428, 431; Application of Keim, 43 CCPA 784, 229 F.2d 466, 469; Plax Corporation v. Precision Extruders, Inc., 3 Cir., 239 F.2d 792, 796.

The ban against double patenting is no mere technicality. Its purpose is to prevent the prolongation of a monopoly by first taking out one patent and at a later date a second patent for substantially the same invention. There are some expressions in the books to the opposite effect. They seem to be out of line with what appears to be, to this Court, the prevailing rule of law, certainly the rule prevailing in this Circuit.

The question then is whether the Hodge patent and the present application cover substantially the same invention. The only difference between the two sets of claims is that in the pending application the composition known as Zinc Bacitracin is claimed as such. In the Hodge patent it was claimed in combination with a matrix which contained the composition.

It was held in the Application of Craige, 38 CCPA 1114, 189 F.2d 620, 623, that: "Certainly it cannot be inventive to merely take an old composition and put it into tablet form." And again, the Court said in the same opinion: "Merely to form the instant prior art compositions into compressed tablet form for any reason whatsoever could hardly ever be called invention."

The Court therefore concludes that there is no patentable difference between the Hodge patent and the invention claimed in the present application and, consequently, that the defense of double patenting must be sustained.

Although this conclusion would be sufficient to dispose of this case, it seems desirable to determine all of the issues involved, and therefore the Court will proceed to the issue of lack of invention.

It is claimed that zinc bacitracin cannot be a proper subject of a patent as a composition of matter because the process by which this substance was derived was described in certain publications cited by the Patent Office. While these publications did not use the term "zinc bacitracin", both the Examiner and the Board of Appeals reached the conclusion that the process led inescapably to the production of zinc bacitracin and that therefore zinc bacitracin could not be deemed a new composition.

The plaintiff called a witness who testified that this process would not produce zinc bacitracin unless another vital step was added to the process, which was not mentioned in the prior art, namely, the introduction of caustic soda in order to reduce the acidity of the solution out of which zinc bacitracin is precipitated.

There being a difference of opinion between the Patent Office experts and the plaintiff's expert, who is a member of the plaintiff's staff, great weight must attach to the views of the technical experts of the Patent Office. Under the Patent Office practice there would have been an opportunity for the applicant to submit proof in support of his contention to the officials of the Patent Office. He failed to do so.

Moreover, experiments could have been conducted and the depositions of wit-

nesses taken in connection with this trial, or possibly witnesses who conducted the experiments could have been called to testify orally. This was not done. The Court is of the opinion that the views of the Patent Office on this technical aspect of the matter have not been overcome by a preponderance of evidence.

On both grounds, the Court is of the opinion that the action of the Patent Office should be sustained. Accordingly, judgment will be rendered for the defendant.

Counsel will please submit proposed findings of fact and conclusions of law.

The Court is indebted to both counsel for a very able and helpful presentation of this case.