56 CCPA

**Application of Vincent J. FRILETTE and Paul B. Weisz.**

**Patent Appeal No. 8157.**

United States Court of Customs and Patent Appeals.

June 26, 1969.

William E. O'Brien, McCarthy, Depaoli & O'Brien, Washington, D. C., attorneys of record, for appellants.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. S. Wm. Cochran, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, COLLINS and NEESE, Judges, sitting by designation, and ALMOND and BALDWIN, Judges.

BALDWIN, Judge.

Frilette and Weisz appeal from the Patent Office Board of Appeals decision affirming the examiner's rejection of claims 166–170, 173, 174, 187, 188, 191, and 193–198 of their application [1] as unpatentable over Plank '249 [2] under 35 U.S.C. § 102(e) or at least 35 U.S.C. § 103, or on the ground of double patent-

---

1. Serial No. 161,242, filed December 21, 1961, for "Composition," assigned to Socony Mobil Oil Company, Inc. and allegedly a continuation-in-part of serial No. 754,915, filed August 14, 1958, now U. S. Patent 3,140,322, issued July 7, 1964 to Frilette and Weisz for "Selective Catalytic Conversion" [hereinafter the '322 patent], also assigned to Socony Mobil Oil Company, Inc.

2. U. S. Patent 3,140,249, issued July 7, 1964 to Plank and Rosinski for "Catalytic Cracking of Hydrocarbons with a Crystalline Zeolite Catalyst Composite" on an application filed July 12, 1960 [hereinafter the '249 patent], also assigned to Socony Mobil Oil Company, Inc.

ing in view of the claims of Plank '253,[3] assigned to appellants' assignee.

## THE INVENTION

The invention relates to porous, crystalline aluminosilicates, sometimes referred to as "molecular sieves," which have particular value in the catalytic cracking of hydrocarbon oils. The compositions of the present invention, which may be referred to as acid-metal aluminosilicates, have an acid moiety supplied by a non-metallic cation, such as hydrogen or ammonium ion, and a metal moiety supplied by a metal cation having a valence greater than one which is selected from metals of Group IB through VIII of the Periodic Table. The compositions are prepared by treating a crystalline aluminosilicate with a solution containing the desired cations until such time as the sodium level of the aluminosilicate is reduced and the aluminosilicate is base exchanged to contain combinations of the aforementioned non-metallic and metallic cations.

## THE REFERENCES

The '249 patent, relating to aluminosilicate catalyst compositions for hydrocarbon conversion, contains the following disclosure which was particularly relied upon by the examiner:[4]

Base-exchange required for introducing the necessary replacing ions is carried out for a sufficient period of time and under appropriate temperature conditions to replace at least about 90 percent of the alkali metal originally contained in the aluminosilicate and to effectively reduce the alkali metal content of the resulting composite to below about 1 weight percent. It is contemplated that any

ionizable compound of a metal capable of replacing the alkali metal may be employed for base-exchange either alone or in combination with other ions. Compounds will be used wherein the replacing ion is in the cationic state. Inorganic salts will usually be employed. Suitable materials include soluble compounds of calcium, magnesium, manganese, vanadium, chromium, cerium, aluminum, lanthanum, praseodymium, neodymium, samarium and other rare earths, as well as solutions containing mixtures of these ions and mixtures of the same with other ions, such as ammonium. Organic salts of the foregoing metals, such as acetate and formate may also be used, as well as very dilute or weak acids. A particularly effective base-exchange solution is one containing calcium and ammonium ions in a ratio in the range of 20/1 to 0.5/1 and preferably 10/1 to 1/1, to effect replacement of the alkali metal ion with calcium and ammonium ions.

If available as a reference, the effectiveness of the '249 patent, filed prior to appellants' filing date, was conceded by appellants before the board as follows:

Appellants concede that if the Plank and Rosinski "249" patent is available as a reference, the appealed claims would be obvious to one of ordinary skill in the art unless the cross-referencing thereof under Rule 79 is found sufficient to remove that patent.

The '253 patent, filed subsequent to appellants' filing date, has a disclosure similar to that of the application on appeal; however, the scope of the claims is different in that the metals of Group

---

3. U. S. Patent 3,140,253, issued July 7, 1964 to Plank and Rosinski for "Catalytic Hydrocarbon Conversion with a Crystalline Zeolite Composite Catalyst" on an application filed May 1, 1964 [hereinafter the '253 patent], also assigned to Socony Mobil Oil Company, Inc.

4. In the Office Action of January 4, 1965, the examiner stated:

Claims 166–170, 173, 174, 175, 187, 188, 191, 193–198, and 201 are rejected as unpatentable over Plank et al. (35 U.S.C. § 103) who discloses crystalline zeolites base-exchanged to remove the alkali metal content. In column 7, lines 63–75 and column 8, lines 1–10, it is disclosed that the alkali metal ions may be replaced with a mixture of metal and ammonium ions.

IB through VIII (as recited in the claims here on appeal) are, in the '253 patent, restricted to the rare earth metals of those groups.

### INVENTORSHIP

Certain portions of the record are now summarized as they bear upon an important aspect of this case, namely, the inventorship of the subject matter involved in the present application and the '249 patent and the priority thereof.

The present application was originally filed as the joint invention of four inventors, Frilette and Weisz, appellants herein, and Plank and Rosinski, the reference patentees. During the course of prosecution, it was determined that Plank and Rosinski had been incorrectly joined as inventors, and an amendment to correct the misjoinder was filed, accompanied by an affidavit of the four originally-named inventors pursuant to Rule 45(b) [5] of the Patent Office Rules of Practice. That affidavit was considered defective by the examiner for failure to state sufficient facts to establish that the misjoinder had been made through error and without deceptive intention; so a second Rule 45(b) affidavit was filed, approved by the examiner, and entered. That second affidavit, executed by Frilette, Weisz, Plank, and Rosinski, includes the following statements:

> That in connection with the filing of the above-identified application, we have reviewed our recollection and laboratory records relating to the subject matter of application Serial No. 161,-242 and as a result thereof, we have determined that said CHARLES J. PLANK and EDWARD J. ROSIN-SKI did not work conjointly with VINCENT J. FRILETTE and PAUL B. WEISZ in conceiving crystalline

aluminosilicate compositions which contain both hydrogen ions, or ions capable of conversion thereto, in combination with cations of metals selected from Group IB through Group VIII of the Periodic Table, the method of preparing such compositions and the use of the same for the conversion of hydrocarbons.

\* \* \* \* \* \*

That prior to December 21, 1961, the original applicants, as well as many other scientists, were members of a large team engaged in research at Socony Mobil Research Laboratories, Paulsboro, New Jersey, for the purpose of investigating aluminosilicate compositions, their method of preparation and the use of such compositions in various conversion processes; that it was previously believed that CHARLES J. PLANK and EDWARD J. ROSINSKI had made an inventive contribution to the invention claimed in the application Serial No. 161,242 due to the fact that they had carried out experimentation involving the preparation of crystalline aluminosilcates containing both hydrogen ions and metal cations and they had carried out actual conversions of hydrocarbons therewith; and it was believed that said experimental work was carried out as a result of conferences and discussions among the original applicants due to the vast amount of effort being exerted by the scientists at Paulsboro on the entire field of aluminosilicates; that based on a continuing review and detailed analysis of a large number of laboratory records forming the basis of the inventive concepts of the claimed subject matter of said application, it was concluded during the latter part of September, 1963, that said CHARLES J. PLANK

---

5. Rule 45(b) reads, in pertinent part:
   If an application for patent has been made through error and without any deceptive intention by two or more persons as joint inventors when they were not in fact joint inventors, the application may be amended to remove the names of those not inventors upon filing a statement of the facts verified by all of the original applicants, and an oath or declaration as required by rule 65 by the applicant who is the actual inventor, provided the amendment is diligently made. Such amendment must have the written consent of any assignee.

and EDWARD J. ROSINSKI did, in fact, conduct their experimental work independently and said work was carried out subsequent to independent experimental work by VINCENT J. FRILETTE and PAUL B. WEISZ involving preparation of aluminosilicates containing both hydrogen ions and metal cations and conversion of hydrocarbons therewith; * * *.

Moreover, in accordance with Rule 79 [6] of the Patent Office Rules of Practice, the printed specification of the '249 patent contains the following statement added by an amendment:

[T]he disclosed but unclaimed subject matter relating to the concept of crystalline aluminosilicates having associated therewith both hydrogen ions or precursors thereof and metallic cations, including their method of preparation and cracking therewith, is disclosed and claimed in commonly-owned copending application Serial No. 161,242, filed December 21, 1961.

Additionally, the record of the '249 patent includes a disclaiming affidavit of Plank and Rosinski which was brought to the attention of the examiner in the prosecution of the present application by an amendment filed after final rejection and which was referred to in appellants' brief before the board. That affidavit, in pertinent part, reads:

That in connection with the filing of the above-identified application they have reviewed their recollection and laboratory records relating to the subject matter of application Serial No. 42,284, and as a result thereof hereby affirm the fact that they did not invent the generic concept of crystalline aluminosilicate compositions which contain both hydrogen ions or ions capable of conversion thereto in combination with cations of metal selected from Group IB through

Group VIII of the Periodic Table, the method of preparing such compositions and the use of the same for cracking of hydrocarbons—the same being the invention of VINCENT J. FRILETTE and PAUL B. WEISZ.

Still further, the solicitor has not challenged appellants' statement in their brief that

the Patent Office has accorded the present appellants the benefit of the 1958 filing date of their parent "322" patent [of record here; see n. 1] for a reduction to practice of the acid-calcium species of the claimed crystalline aluminosilicates.

## THE REJECTIONS

### On the '249 Patent

The examiner noted appellants' concession that the invention would be obvious under 35 U.S.C. § 103 in view of the '249 patent if it were available as a reference and took the position that appellants had failed, by either the Rule 79 paragraph in the '249 patent or the affidavits of record, to overcome the '249 patent as a reference against them. The examiner contended that cross-referencing under Rule 79 has no legal effect and that the particular Rule 79 paragraph in the '249 patent was inadequate, stating:

It appears a well settled principle of law as set forth in the Manual of Patenting Examining Procedure, Section 715.01(b) that the mere fact that a reference patent which shows but does not claim certain subject matter and an application which claims it are owned by the same assignee does not avoid the necessity of filing an affidavit under Rule 131 and that a common assignee does not obtain any rights in this regard by virtue of common ownership which he would not have in the absence of common

6. Rule 79:
   *Reservation clauses not permitted.* A reservation for a future application of subject matter disclosed but not claimed in a pending application will not be permitted in the pending application,

but an application disclosing unclaimed subject matter may contain a reference to a later filed application of the same applicant or owned by a common assignee disclosing and claiming that subject matter.

ownership. Without some clear indication, it would not appear that the purpose of Rule 79 was to provide an exception to this well established principle of law.

Furthermore, it appears that the cross-referencing in the Plank et al. "249" patent is incomplete and inadequate in view of the Plank et al. "253" patent which as the present application also discloses and claims the hydrogen-rare earth crystalline aluminosilicates disclosed but not claimed by the Plank et al. "249" patent. Note that Plank et al. in their "249" patent cross-referenced the present application but failed to cross-reference the application which resulted in the Plank et al. "253" patent.

The cases cited by appellants are not believed to be in point. In Pierce v. Watson, [107 U.S.App.D.C. 226,] 275 F.2d 890, 124 USPQ 356 (D.C.Cir. 1960) [citation corrected], the court was not confronted with Rule 79 and only mentioned it by way of dictum by suggesting that the assignee could have protected itself by the use of Rule 79. Certainly such an unsupported suggestion cannot override the well established principle of law stated above.

In In re Blout, 333 F.2d 928, 52 CCPA 751, 142 USPQ 173 (1964) [citation corrected], the appellants relied on Rule 79 contending that even if their Rule 131 affidavit was not adequate, Rule 79 applied and obviated the need for an affidavit under Rule 131. However, the court failed to decide the case on Rule 79.

The examiner also dismissed the affidavits of record as follows:

Appellants' contention that the affidavits of record establish facts which clearly show that Plank, Rosinski, Frilette, and Weisz worked together for the Socony Mobil Oil Company, that their work was contiguous, and that Frilette and Weisz are claiming what they invented and Plank and Rosinski are claiming what they invented, as in the Blout case, is not believed well taken. The affidavits of record merely contain statements of unproven facts and contain no factual evidence establishing just what Frilette and Weisz invented and just what Plank and Rosinski invented.

The board adopted as its own the examiner's reasons for rejecting the claims, adding that:

The Examiner indirectly refers to In re Beck, 155 F.2d 398, 33 CCPA 1060, 69 USPQ 520 (1946) [citation corrected]· for the view that the common assignee does not acquire any rights in this regard by virtue of common ownership which he would not have had in the absence of common ownership. The Examiner feels that without some clear indication to the contrary, it would not appear that the purpose of Rule 79 was to provide an exception to the principle stated in In re Beck, supra.

### On the '253 Patent

· The examiner also rejected the claims as unpatentable over the claims of the '253 patent, assigned to the present assignee, on the grounds of double patenting. It was the examiner's position that subject matter embraced within the narrower claims of the '253 patent would necessarily fall within the broader scope of the claims of the application here involved.

Replying to the examiner, appellants drew attention to an earlier-filed terminal disclaimer,[7] disclaiming the term of the patent which should issue from the present application subsequent to the expiration date of the '253 patent. Appellants argued that the terminal disclaimer obviated the double patenting rejection in view of the decisions of

---

7. The terminal disclaimer was filed during prosecution to overcome a double patenting rejection over the claims of the '322 patent which issued on the same day as the '249 and '253 patents; that double patenting rejection was thereupon withdrawn by the examiner.

this court in In re Robeson, 331 F.2d 610, 51 CCPA 1271 (1964); In re Kaye, 332 F.2d 816, 51 CCPA 1465 (1964); and In re Bowers, 359 F.2d 886, 53 CCPA 1590 (1966).

The board, affirming the double patenting rejection, found appellants' reliance on the terminal disclaimer misplaced, stating:

> We do not consider the cited decisions to be in point since the factual situation here is entirely different from that presented in the cited decisions in that the claims herein differ in scope only from those of the patent. The relationship herein presented is that of genus-to-species rather than the species-to-species relationship presented in the cited decisions. We find more in point in In re Siu, 222 F.2d 267, 42 CCPA 864, 105 USPQ 428 (1955); Hays v. Brenner, [123 U.S. App.D.C. 96,] 357 F.2d 287, 148 US PQ 365 (D.C.Cir. 1966); and In re Bridgeford, 357 F.2d 679, 53 CCPA 1182, 149 USPQ 55 (1966). [Citations corrected.]

## OPINION

### The Rejection on the '249 Patent

It is noted that the issue of the availability of the '249 patent as a reference was argued here the same day we handed down our recent decisions in In re Mathews, 408 F.2d 1393, 56 CCPA —— (1969), and In re Facius, 408 F.2d 1396, 56 CCPA —— (1969) which include an extended treatment of the most relevant precedents relied upon by the present parties in approaching the question of what expedients apart from a Rule 131

affidavit may be available to an applicant to overcome a patent used as a prior art reference.

■ In *Mathews*, the applicant Mathdown our recent decisions in In re Mathews was faced with a 35 U.S.C. § 102 (e) anticipation rejection based upon *certain unclaimed disclosure in an earlier-filed patent to another inventor Dewey*. The patentee Dewey, however, executed an affidavit disclaiming inventorship of the relevant disclosure and averring that he first learned of the relevant subject matter from Mathews. We pointed out that the reason for considering a patent to be available as a reference as of its filing date against a later filed application, traced back to Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651 (1926), is that the patent is *prima facie* evidence that the applicant is not, with reference to the subject matter disclosed in the patent, the first inventor to whom the statute gives the right to a patent [8] absent a statutory bar under 35 U.S. C. § 102(b). *Facius*, of course, reaffirmed "that rejections are based on statutory provisions, not on references, and that the references merely *evidence* * * the ground of rejection." The Dewey affidavit made it clear that Dewey was not an inventor at all, having *derived* his conception from Mathews, and therefore Mathews was the *only* and hence necessarily the *first* inventor, *insofar as that record showed.*

■ In the present situation, however, we do not have only one inventor accompanied by one deriver but instead two

---

8. The "original and *first* inventor" language of the earlier patent statute, Rev. Sts. § 4920, amended, March 3, 1897, c. 391, § 2, 29 Stat. 692, which was considered by the Supreme Court in *Milburn* no longer appears in that precise form in the present statute. However, where there is a first inventor who has not abandoned, suppressed or concealed his invention, then an *inventor other than* the first inventor is not entitled to a patent pursuant to the present statute, 35 U.S.C. § 102(g), which reads in pertinent part:

§ *102. Conditions for patentability; novelty and loss of right to patent*

A person shall be entitled to a patent unless—

(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. * * *

The requirement of *first* inventorship, considered in *Milburn*, is thus implicitly continued in the present statute.

*independent* inventive entities, i.e., Frilette-Weisz inventors of the presently claimed subject matter and Plank-Rosinski independent [9] inventors of subject matter that, if not precisely anticipatory, would, as appellants concede, have made the present invention obvious to one skilled in the art at the time it was made. In such a situation, involving a patentee and an applicant each inventing *independently* of the other, the later applicant would ordinarily be required to meet the requirements of a Rule 131 showing in order to antedate the patent, effective as a reference as of its filing date. Although there is common assignment here of the patent and the application, as indeed there was in *Mathews*, we see no reason why common assignment alone should permit the applicant to antedate the patent by less than is required to satisfy Rule 131 in the absence of a showing that the patentee derived his knowledge from the applicant.

The rejection on the '249 patent is therefore *affirmed.*

### The Rejection on the '253 Patent

The '253 patent claims [10] recite species of crystalline aluminosilicates containing non-metallic cations, such as hydrogen or ammonium ions, in combination with a metal cation comprising *a rare earth* cation. The claims on appeal recite crystalline aluminosilicates containing non-metallic cations, such as hydrogen or ammonium ions, in combination with metallic cations selected from Groups IB through VIII of the Periodic Table which, of course, would include the rare earth cations falling within these groups. Thus, we agree with the parties that the rejected claims and those of the patent bear the relation of genus to species.

Appellants argue that a terminal disclaimer is effective to obviate a double patenting rejection in a genus-species situation under the rationale of In re Braithwaite, 379 F.2d 594, 54 CCPA 1589 (1967); In re Braithwaite, 379 F.2d 606, 54 CCPA 1604 (1967); and In re Jentoft, 392 F.2d 633, 55 CCPA 1026 (1968); all of which were decided after the board's decision in the present case. In each of these cases, this court gave effect to a terminal disclaimer to overcome a double patenting rejection as to the appealed claims.

The solicitor concedes the relevance of these cases with respect to the efficacy of a terminal disclaimer where the rejected claims and those of the applicant's patent bear the relation of genus to species. However, he seeks to distinguish the present situation by pointing out that here two different inventive entities are involved in the patent and the application. The solicitor would apparently prefer to proceed in such a situation according to an election theory stating:

> Where the inventors are different, however, the common assignee, by electing to issue one patent, has, in ef-

9. The independent nature of the work carried out by Plank and Rosinski is indicated, for example, by their Rule 45 affidavit stating that they "did in fact conduct their experimental work independently." Moreover the Plank and Rosinski affidavit in the record of the '249 patent does not disclaim independent inventorship by them of the specific matter disclosed at column 7, lines 63–75, and column 8, lines 1–10 of the patent, but merely disclaims inventorship of "the generic concept of crystalline aluminosilicate compositions * * *" presently claimed by Frilette and Weisz which appellants concede to be obvious to one skilled in the art from the relevant disclosure of the '249 patent.

10. We note that appellants now argue that certain of the claims on appeal, namely composition claims 169 and 170 and process claims 188 and 191, are not properly included within the double patenting rejection. This is so, appellants assert, because these claims define the metal cations as being cations of divalent metals whereas the rare earth metal cations of the subject matter defined by the claims of the '253 patent are trivalent, so that those claims of the application and the claims of the '253 patent are mutually exclusive. In view of the resolution we make of this case, it becomes unnecessary for us to consider the distinction between claims 169, 170, 188, and 191 and the remaining claims which appellants urge.

fect, determined priority of invention as to any common subject matter in favor of the patentee.

In support of this position, the solicitor relies on our decisions in In re Fischel, 136 F.2d 254, 30 CCPA 1085 (1943), and In re Hession, 296 F.2d 930, 49 CCPA 809 (1961). In those cases, however, different inventive entities involved in a commonly assigned application and patent were seeking claims to the *same* invention. Such a situation is quite different from that in the present appeal where the different inventive entities—Frilette-Weisz and Plank-Rosinski—are pursuing claims to *different* inventions. We are not therefore persuaded that the common assignee here has made any election not to pursue the claims to the generic invention involved in the application on appeal.

Additionally, appellants draw our attention to In re Bowers, 359 F.2d 886, 53 CCPA 1590 (1966), an "obviousness" type double patenting situation, in which different inventive entities were involved in the commonly assigned application and patents. There we reversed the double patenting rejection in view of a terminal disclaimer, and the solicitor characterizes our decision as follows:

> It is recognized that in In re Bowers * * * this Court held that a terminal disclaimer was effective to avoid a rejection on "double patenting" where there were different inventive entities in the commonly owned patent and application.

However, the solicitor seeks to distinguish *Bowers* on the ground that in that case there was a common inventor in the two inventive entities, hinting that there may have been some question in the court's mind whether the application had been filed by "another" in view of In re Blout, 333 F.2d 928, 52 CCPA 751 (1964). We find this contention without merit, particularly in view of our subsequent opinion in In re Land, 368 F.2d 866, 54 CCPA 806 at 825 (footnote 10) (1966), which clarified what we meant by "another" in *Blout*.

 In summary, we consider that the terminal disclaimer in this case obviates the double patenting rejection of genus claims based on a commonly assigned patent claiming a species within that genus, notwithstanding wholly different inventive entities. The rejection on the '253 patent is therefore reversed.

### SUMMARY

The rejection on the '249 patent is affirmed; the rejection on the '253 patent is reversed.

Affirmed.