54 CCPA

**Application of Robert M. COLE.**
**Patent Appeal No. 7748.**

United States Court of Customs
and Patent Appeals.

March 9, 1967.

Herman Hersh, Chicago, Ill. (George A. Degnan, Washington, D. C., of counsel), for appellant.

Joseph Schimmel, Washington, D. C. (L. F. Parker, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals affirming the rejection of claims 1 to 5 of appellant's application serial No. 30,064, filed May 19, 1960, for "Method of Imaging Lithographic Plates and Element for Use in Same."

Appellant's specification describes his invention as follows:

> In accordance with the practice of this invention, a resin-zinc oxide containing xerographic master plate is electrostatically charged, imaged and then treated with a resin developer. The imaged xerographic plate is then subsequently treated by known methods to cure the resin into a water-insoluble, water-repellent, ink-receptive imaging material. The plate is then subjected to an aqueous etch which renders the non-imaged portion of the plate hydrophilic or water-receptive and ink-repellent, without destroying the ink-receptive, water-repellent, hydrophobic characteristics of the imaged areas of the plate. * * *.

Claim 1 is illustrative:

> · The process of producing a planographic printing plate directly from a *resin*-zinc oxide-coated xerographic master plate which comprises treating an *electrostatically latent imaged* xerograph plate with a resinous toner to form an image corresponding to the latent electrostatic image, converting the toner to a water-repellent, ink-receptive state and then etching the plate with an aqueous solution of a water-soluble, aliphatic *polycarboxylic acid* to convert the non-imaged portion of the plate to a water-receptive, ink-repellent, hydrophilic surface. [Emphasis added.]

Claim 2 recites the preferred presence of a wetting agent in the aqueous etching solution, which agent is limited in claim 3 to a water-miscible alcohol and further limited in claims 4 and 5 to a butanol. Claims 3 to 5 specify the use of oxalic acid, appellant's preferred polycarboxylic acid.

Although several grounds of rejection were applied against these claims, we need to consider only the rejection of all

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

claims for double patenting in view of claim 5 of Relph patent No. 3,157,117, which claim reads as follows:

5. The method of producing a coated planographic printing plate, comprising coating a base sheet with a composition having a solvent as the diluent and containing an *alkyd resin* as the adhesive, a finely divided zinc oxide and an inert filler, the zinc oxide being present in the ratio of 1 to 8 parts by weight of zinc oxide to one part by weight of the alkyd resin, drying the coating on the surface of the base sheet, *imaging* the coated surface to provide an ink-receptive, water-repellent imaged portion, and treating the surface of the plate with a 5 to 15% *oxalic acid* solution to convert the hydrophobic characteristics of the coated surface in the non-imaged areas to a hydrophilic ink-repellent, water-receptive surface. [Emphasis added.]

As the examiner noted in his answer, there are only three significant differences between appellant's claims and claim 5 of Relph, which patent is assigned to appellant's assignee, A. B. Dick Company. One of these differences is not even reflected in appealed claim 1, namely the presence of a wetting agent, particularly a butanol, in the aqueous etching solution. This is not an essential element of appellant's invention, however, but rather is only a preferred embodiment, according to the specification. In any event, inclusion of a butanol in an aqueous etching solution for converting the non-imaged areas of a lithographic printing plate to a hydrophilic surface is old in this art, as shown by Sugarman Australian patent No. 210,374, which corresponds to Belgian patent No. 541,-668 of October 15, 1955.

A second difference resides in the fact that claim 5 of Relph is limited to alkyd resins, while appellant's claims recite resins broadly as binders for the common photoconductor, zinc oxide. However, appellant's specification discloses a preference for alkyd resins, and the same resin-oxide ratios as recited in claim 5 of Relph, as follows:

* * * the preferred resinous substances to bind the zinc oxide onto the paper backing sheet are the alkyd resins.

* * * * * *

The alkyd resin is combined with the zinc oxide to produce a weight ratio of alkyd resin to oxide within the range of from 1–1 to 1–8. * * *

The fact that the starting plates of appellant and Relph are the same is evident from the following disclosure in the application before us:

The starting zinc oxide alkyd resin plates are described in greater detail as to their method of preparation in the application of Earl B. Relph and Henry A. Dahl, Serial No. 693,626, filed October 31, 1957.

The aforementioned application matured into the Relph patent of record on November 17, 1964.

The third difference noted by the examiner is the one on which appellant chiefly relies, namely the fact that his plates are "electrostatically latent imaged" while those *disclosed* by Relph are *directly* imaged. However, the claims of Relph, including claim 5, recite "imaging" broadly, without any limitation to a particular method of imaging the printing plates. We think it is evident that neither Relph nor the examiner of his application considered any specific mode of imaging printing plates to be a restrictive feature of the Relph invention. If the invention had been considered limited to any given imaging method, such a limitation would have been inserted in the claims prior to issuance of the Relph patent. In the absence of any such limitation, we must consider the claims of Relph to read on and cover, at a minimum, the direct imaging method disclosed by Relph and all equivalent known methods of imaging lithographic printing plates. Sugarman discloses that "[t]here are several known methods for preparing the hydrophobic image on a lithographic printing plate," including appellant's

method, which Sugarman describes as follows:

> \* \* \* producing an electrostatic latent image, directly on the surface of the photoconductive coating, developing said latent image with a hydrophobic developer powder, fixing said developer powder to said coating and then producing a hydrophilic material in the areas of the coating not covered by the fixed powder image. \* \*

Thus, as we interpret the claims of Relph, appellant is claiming an invention which is obvious in view of that *claimed* by Relph in his claim 5, taken together with Sugarman, and the appealed claims were properly rejected on the ground of double patenting of the obviousness type.

Although appellant argues that his date of invention was prior to the filing date of Relph, we think it is well settled that filing dates are of no concern in double patenting situations. See, e. g., In re Bowers, 359 F.2d 886, 53 CCPA 1590.

The decision of the board is affirmed.

Affirmed.