55 CCPA

### Application of Howard G. ROGERS.
### Patent Appeal No. 7909.

United States Court of Customs
and Patent Appeals.
May 16, 1968.

Stanley H. Mervis, Donald L. Brown,
Cambridge, Mass. (Alvin Isaacs, Fram-
ingham Centre, Mass., of counsel), for
appellant.

Joseph Schimmel, Washington, D. C.
(Fred W. Sherling, Washington, D. C.,
of counsel), for the Commissioner of
Patents.

Before Worley, Chief Judge, and
Judges RICH, SMITH, ALMOND, and
KIRKPATRICK.[*]

WORLEY, Chief Judge.

This appeal is from the decision of
the Board of Appeals affirming the ex-
aminer's rejection of claims 1, 2, 4 and
5 in appellant's application[1] as "unpat-
entable over the claims of Haas[2] in view
of Sawdey, Van Allan et al. or Tulagin
et al."

The invention relates to an improve-
ment in a process of forming a dye image
in an image-receiving layer by diffusion
transfer techniques.[3] According to the
specification, the color fastness of such
dye images upon exposure to sunlight
"left something to be desired." To solve
that problem appellant found that:

> \* \* \* prior to processing, an ultra-
> violet light absorber may be incorpor-
> ated in a layer *over* the dyeable
> stratum of an image-receiving element
> and, during processing, that a sub-
> stantial portion of the transferred
> color-providing substances may be
> caused to permeate through such a
> layer to the underlying dyeable stra-
> tum to form a color image which is
> protected from the deleterious effects
> of sunlight by the ultraviolet light
> absorber in the overlying layer.
> (Emphasis supplied.)

---

[*] Senior District Judge, Eastern District of
Pennsylvania, sitting by designation.

1. Serial No. 354,963, filed March 26, 1964
as a continuation of Serial No. 786,766,
filed January 14, 1959.

2. U.S. Patent 3,069,262, issued December
18, 1962, on an application filed March
27, 1958. Both the Haas patent and the
present Rogers application are assigned
to Polaroid Corporation. The record
shows that Rogers filed an affidavit un-
der Patent Office Rule 131 satisfactorily
establishing that he reduced to practice
the invention of his claims prior to the
filing date of the Haas patent, thus ef-
fectively removing the Haas patent as
evidence of prior art under 35 U.S.C. §§
102 and 103.

3. The general process is more fully de-
scribed in this court's opinion in In re
Land, 368 F.2d 866, 54 CCPA 806 (1966).

The improvement is reflected in claim 1:

1. In a process of forming a photographic image in color wherein an exposed silver halide emulsion is developed in the presence of at least one dye developer to provide an image-wise distribution of mobile dye developer, said dye developer being a compound which is both a dye and silver halide developing agent, and said imagewise distribution of mobile dye developer is transferred to a superposed image-receiving stratum to produce a transfer image thereon, *the improvement wherein* said transfer is effected to an image-receiving element having an ultraviolet light absorber *in an alkali-permeable polymeric stratum over* the dyeable image-receiving stratum and transferring a substantial portion of the said mobile dye developer through said polymeric stratum to said dyeable image-receiving stratum, said polymeric stratum having less affinity for the said dye developer than the image-receiving stratum, *said polymeric stratum comprising an alkali-insoluble polymer and said ultraviolet light absorber being nondiffusible*. (Emphasis supplied.)

Claim 4 recites that a non-diffusible thiazolidine compound is employed as the ultraviolet light absorber, while claim 5 calls for the use of a polymeric ultraviolet light absorber.

The Haas patent also discloses and claims an improvement in the process of forming a dye image by diffusion transfer. Claim 1 of that patent, relied on by the board in support of the double patenting rejection, has a format similar to that of appellant's claim 1, with the improvement recited in the following language:

* * * the improvement which comprises increasing the stability of said positive dye image by *contacting* said positive dye image with a compound selected from the group consisting of pyrogallol, gallic acid and esters of gallic acid. (Emphasis supplied.)

The board agreed with the examiner that the present claims do not define a separately patentable invention from that claimed by Haas. Like the examiner, the board thought it proper to look to the disclosure of Haas "to determine the scope of broad terms" employed in the Haas claims. It found that the step of *"contacting* said positive dye image with a compound" recited in claim 1 of Haas "is clearly intended to cover" not only the incorporation of the ultraviolet light absorber *in* the image-receiving layer itself, but also its use in an *overlying* layer. It also found the claims of the patent "include the nondiffusible as well as diffusible stabilizers," and concluded that:

The differences between claims 1 and 2 herein and the patent claims are thus only in scope.

It is evident from the above discussion, as well as the examiner's reliance on 35 U.S.C. § 101,[4] that, as to claims 1 and

---

4. As a preliminary matter, appellant contends that the examiner's double patenting rejection under 35 USC 101 as applied to commonly owned applications of different inventors "is inconsistent with" the position expressed by the Commissioner in his notice of January 31, 1967, appearing at 834 O.G. 1615, and is, without more, "clear grounds for reversal." That notice, promulgated about a year *after* the board decision in the present appeal, reads in pertinent part:
* * * The term "double patenting" is properly applicable only to cases involving two or more applications and/or patents of the same inventive entity and *should not be applied to situations involving commonly owned cases of different inventive entities.*
* * *
* * * * *
In situations involving cases filed by different inventive entities regardless of ownership, Sections 102 and 103 of 35 U.S.C. preclude the granting of two or more patents when directed to identical inventive concepts or when one of the concepts would be obvious in view of the other. A terminal disclaimer can have no effect in this situation since the basis for refusing more than one patent is not connected with any ex-

2, both the examiner and board regarded appellant to be claiming the same invention as previously claimed by Haas. Although it is not entirely clear from the opinion of the board precisely what reasoning it employed in determining that Haas and Rogers are claiming the same invention, we can infer the examiner's reasoning in interpreting the Haas' claims from the direct references to portions of the Haas disclosure[5] appearing in his Answer. The examiner observed that Haas discloses stabilizing the dye image from sunlight by treating it, *after* its formation by diffusion transfer, with a solution comprising the pyrogallol derivative stabilizing agent and a film-forming polymer, thus forming a layer over the dye image which contains all or at least part of the total amount of stabilizer applied. That process *per se*, of course, has little relation to what is being claimed here. Or, the examiner noted, Haas may incorporate the stabilizer as part of his image receiving element *prior* to the transfer process by either (1) mixing the stabilizer with the dyeable material employed as an image receiving layer prior to coating it on its support, or (2) applying the stabilizer "as above, by permeation." Relying on the latter disclosure, the examiner evidently concluded that Haas contemplated applying to the dyeable

tension of monopoly. (Emphasis supplied.)

It may well be that the examiner's position is inconsistent with the above quoted portion of the Commissioner's notice. The examiner's position, however, is not inconsistent with many prior decisions of this court. See, for example, In re Cole, 373 F.2d 532, 54 CCPA 1107 (1967); In re Keim, 229 F.2d 466, 43 CCPA 784 (1956); In re Stanley, 214 F.2d 151, 41 CCPA 956 (1954); In re Borcherdt, 197 F.2d 550, 39 CCPA 1045 (1952).

5. Haas discloses in pertinent part:

The color fastness of the colored photographic images, produced in such processes, upon prolonged exposure to sunlight often leaves something to be desired. I have discovered that by using a compound selected from the group consisting of pyrogallol, gallic acid and esters of gallic acid (i. e., esters wherein the acid group of the gallic acid is esterified with an alcohol) to protect the image, the color stability of the images in sunlight is appreciably enhanced.

*One* method of using the above-named stabilizers is to treat the *finished* colored image with a solution comprising the stabilizer to be used. The solution may conveniently be applied to the colored image by immersion, swabbing, coating, spraying, flowing, etc. In an especially useful embodiment, the solution may also comprise a film-forming polymer, such as gelatin, which will serve as a protective surface coating for the image. In addition, the solution may comprise other stabilizing agents such as, for example, as ultraviolet absorbers, etc. Depending upon the solvents present in the solution containing the stabilizer, *and upon whether a film-forming polymer is included*, the stabilizer may be present in a layer *over* the image-receiving layer or it *may, at least in part, permeate* into the image-receiving layer.

*Another mode* of carrying out the processes of this invention is to incorporate the stabilizers herein disclosed into the image-receiving *element prior* to its use in the dye developer transfer processes. The image-receiving element, into which the stabilizer is incorporated, generally comprises a sheet of dye-receptive material and, in preferred embodiments, comprises a support bearing a coating of a dyeable material. The stabilizer may be incorporated by *adding it to the coating solution of dyeable material and applying it therewith, or it may be applied, as above, by permeation.* * * *
* * * * *

* * * *when it is desirable to prevent the stabilizer from migrating*, the R group [of the alcohol ROH utilized to form the ester of gallic acid] may be a *higher alkyl*. * * * As examples of esters of gallic acid which are useful in carrying out the processes of this invention, mention may be made of ethyl gallate, *lauryl gallate*, and benzyl gallate.
* * * * *

While it is not known for certain how the stabilizers of this invention function, it is believed that they possess the ability to function both as antioxidants and as ultra-violet light absorbers. * * * (Emphasis supplied.)

image-receiving layer, *prior* to transfer, a solution comprising the stabilizer (for example, a non-diffusible gallic acid ester such as lauryl gallate) and a film-forming polymer, thus forming a polymeric layer over the image-receiving layer which contains at least some stabilizer and which is later permeated by the dye material during the transfer process.

While agreeing that it was appropriate for the examiner and board to look to Haas' disclosure to facilitate a determination of the *meaning* of the words employed in the patent claims,[6] particularly the meaning of the word "contacting," appellant urges that the Patent Office has misinterpreted the Haas patent. He contends that the Haas specification, properly construed, discloses the placement of the stabilizer only *in* the image-receiving layer prior to transfer, and not in a layer *over* the image-receiving layer.

We need not decide that question, for in our view there are other considerations which convince us that Haas and Rogers are not claiming the same invention. We are presented with a situation in which two inventors have each made an improvement in a basic process. Insofar as Haas' *claimed* invention is concerned, the important consideration is the specific compounds employed as ultraviolet light absorbers. Claim 1, relied on by the board, evinces no concern where those compounds are located, whether they are diffusible or non-diffusible, or whether they are associated with a film-forming polymer.

On the other hand, insofar as Rogers' *claimed* invention is concerned, the *location* of the ultraviolet light absorber in a layer *over* the image-receiving layer, its *non-diffusible* nature and its presence in an *alkali-insoluble, film-forming polymer* are the important considerations. Claims 1 and 2 demonstrate no particular concern with the specific compounds utilized. Indeed, we note that Rogers makes no mention in his specification

of the use of pyrogallol or its derivatives as ultraviolet light absorbers. Under the circumstances, it is difficult, if not impossible, to say that Rogers *claims* the identical invention disclosed and claimed by Haas when Rogers himself does not even *disclose* the subject matter of the Haas specification and claims. In our view, this is not a case in which the respective sets of claims recite the same physical structure or steps in language of *de minimis* difference in scope. Cf. In re Griswold, 365 F.2d 834, 53 CCPA 1565 (1966); In re Knohl, 386 F.2d 476, 55 CCPA —— (1967).

The board also affirmed the examiner's rejection of claims 4 and 5 as not reciting, in the board's words, "a patentably different invention from that claimed in Haas," in view of Sawdey, Van Allan or Tulagin. That rejection, which the parties appear to agree is what has become known as "double patenting of the obvious type" in nature, would necessarily appear to apply to broader claims 1 and 2 as well, claims 4 and 5 being dependent upon claim 2. Said the examiner:

> With regard to the various secondary references, it is admitted that none of Sawdey, Van Allan et al. or Tulagin et al. deal with diffusion transfer processes employing dye developers. They have been retained to show the problem of dye stability in photography is well known and that this problem is solved by placing ultraviolet absorbers contained in alkali-permeable, alkali-insoluble polymer layers over or within the layer in which the dye image is formed. They have also been retained to show the particular ultraviolet absorbers set forth in the instant claims 4 and 5.

> Note is taken that applicant's only exemplified ultraviolet absorbers are those of Sawdey. This reference makes use of the alkali-permeable, alkali-insoluble polymer properties by applying an alkaline developer solution

---

6. See In re Baird, 52 CCPA 1747, 348 F.2d 974 (1965); In re Dinwiddie, 347 F.2d 1016, 52 CCPA 1693 (1965).

to the element and allowing the developer to diffuse through the ultraviolet layer to the underlying layer to couple with a color former to form a dye image, thereby retaining the u-v absorber layer over the dye image layer. * * * it is not deemed unobvious to adapt the idea of Sawdey, Tulagin et al. or Van Allan et al. for use in the claimed process of Haas.

As pointed out by the solicitor, appellant does not appear to argue that the appealed claims would not be an obvious modification in the double patenting sense of the invention claimed in the Haas patent in view of the disclosures of the prior art. Indeed, appellant's brief contents itself with no more than passing mention of the Sawdey, Van Allan and Tulagin patents.

Rather, what argument appellant does present amounts to a challenge to the legal foundation of "obviousness-type double patenting" rejections. He contends:

The Examiner admits that none of the secondary references relied upon deal with diffusion transfer processes employing dye developers. Yet, these references are employed in combination with Haas as showing that it would be "obvious" to modify the claimed invention of Haas in the manner claimed by appellant.

Appellant is gravely concerned with this reasoning as applied to double patenting situations and sincerely believes that it is erroneous and contrary to the spirit of the patent system to deny an application on the grounds of double patenting under 35 U.S.C. 101 [7] under the rationale that it is "obvious" to modify the patented invention, that is, to change the claimed inventive concept to an entirely different invention, to wit, the invention claimed by appellant.

This type of thinking has no place under 35 U.S.C. 101 and this "obviousness" test should be left to matters arising under 35 U.S.C. 103.

\* \* \* \* \* \*

Appellant wishes to point out by reference to the case at bar a distressing dilemma confronting corporate practitioners which, if one follows the position taken by the Patent Office, gives rise to clearly inequitable results.

Inventions like the ones defined in the Haas patent and the involved application are not made in a vacuum. They are made in an effort to further the goals of the corporate assignee and there is a considerable exchange of information between the concerned persons. * * * Haas arrived at one solution [to the problem of light stability of dye images] which resulted in the cited patent. Rogers was not a co-inventor of this concept, but independently arrived at a separate solution. Haas never envisioned the Rogers invention and cannot be said to be a party thereto. It is a fair statement to say that, *absent any prior art*, the corporate assignee, the real party in interest, should be entitled to patent protection on both inventions. * * * Because of the different inventive entities, appellant was compelled as a matter of law to claim his invention in an application separate from that of Haas. Having done what he believes he was compelled to do, appellant finds himself in a box from which, *following the rationale* of the Patent Office, there can be no escape unless this Court expressly rules that this rationale deprives the corporate assignee, the real party in interest, of the patent protection to which it is entitled * * *.

7. It seems to us that appellant, and the examiner as well, are mistaken in thinking that "obviousness-type double patenting" rejections arise under the statutory aegis of 35 USC 101. It is not so much statutory authority as case law development which forms the cornerstone of that segment of the law of double patenting. See In re Zickendraht, 319 F.2d 225, 231, 50 CCPA 1529, 1536 (1963).

Appellant asks us to "modify or distinguish" our "recent line of decisions"[8] to the extent necessary to conform them to the substance of the views he expresses.

 We stated the rationale behind this particular type of double patenting rejection in In re Robeson, 331 F.2d 610, 51 CCPA 1271 (1964):

> Where, as here, the claimed subject matter is an obvious modification of what has already been claimed, a second patent is contrary to one of the fundamental principles underlying the patent system, namely, that when the right to exclude granted by a patent expires at the end of the patent term, the public shall be free to use the invention as well as obvious modifications thereof or obvious improvements thereon. Thus, to grant a second patent for an obvious variation deprives the public of those rights. If, however, the second patent expires simultaneously with the first, the right to fully utilize the patented discovery at the expiration date remains unimpaired. * * *

Appellant's arguments do not convince us that that policy is unsound or in need of modification when applied to the facts here. By the same token, those arguments do not provide us with grounds to distinguish our earlier decisions in principle from the present situation. Nor would it appear appellant and his assignee are in as much of a "box" as he envisions. See In re Borg, 392 F.2d 642, 55 CCPA —— (1968); In re Bowers, 359 F.2d 886, 53 CCPA 1590 (1966); Ex parte Deering, 157 USPQ 164 (Pat. Off.Bd.App.1968).

In that regard, appellant and his assignee filed a terminal disclaimer in the Patent Office the day before he filed his Notice of Appeal to this court. Since that document was neither timely filed nor considered below, we will not consider it here. 35 U.S.C. § 144; In re Heyl, 379 F.2d 1018, 54 CCPA 1608 (1967).

The decision is affirmed.

Affirmed.

SMITH, J., concurs in the result.

KIRKPATRICK, J., took no part in the decision of this case.

8. Appellant regards In re Simmons, 312 F.2d 821, 50 CCPA 990 (1963); In re Kiekhaefer, 299 F.2d 866, 49 CCPA 943 (1962); and In re Eckel, 317 F.2d 401, 50 CCPA 1248 (1963) as exemplary of cases in which the actual state of the prior art in addition to the particular patent claims has been considered in determining the existence or non-existence of double patenting. We might add In re Ockert, 245 F.2d 467, 44 CCPA 1024 (1957); In re Keim, 229 F.2d 466, 43 CCPA 784 (1956); In re Hadsel, 173 F.2d 1010, 36 CCPA 1075 (1949); In re Barge, 96 F.2d 314, 25 CCPA 1058 (1938); and In re Byck, 48 F.2d 665, 18 CCPA 1208 (1931) as illustrative that the principle of "obviousness-type double patenting" rejections is hardly "recent," though in our more recent opinions our terminology has been made more explicit than in some of those early cases, many of which antedate the Patent Act of 1952.