**In re Paolo LONGI, et al.**

**Appeal No. 84–1561.**

United States Court of Appeals, Federal Circuit.

Decided April 11, 1985.

investigate the Pomponios' affairs. The request was granted on May 5, 1972.

Ellsworth H. Mosher, Stevens, Davis, Miller & Mosher, of Alexandria, Virginia, argued for appellants.

Harris A. Pitlick, Associate Solicitor, of U.S. Patent & Trademark Office, Arlington, Va., argued for appellee. With him on the brief were Joseph F. Nakamura, Sol. and John W. Dewhirst, Associate Sol., Washington, D.C.

Before FRIEDMAN and DAVIS, Circuit Judges, and SKELTON, Senior Circuit Judge.

DAVIS, Circuit Judge.

This is an appeal from a decision of the Patent and Trademark Office Board of Appeals (Board) affirming the examiner's final rejection of appellants' claims 17–34 in application Serial No. 543,520, (January 23, 1975) entitled "Polymerization Catalyst." The Board's affirmance was based upon a holding of obviousness-type double patenting over the claims of three commonly-owned applications, in view of four prior art patents to others. We affirm.

## I.

## BACKGROUND

### A. *The Application.*

Appellants claim certain highly active catalysts used in the polymerization of ethylene. The application discloses that the polymerization of ethylene has been aided by "Ziegler" catalysts which are complexes of transition metal halides (the transition metal being titanium, and the halide being a chloride, for example) with organometallic compounds of metals belonging to Groups I, II, or III of the Periodic Table. The invention claimed in the application relates to a titanium-based Ziegler catalyst obtained by contacting the titanium compound described below, with an anhydrous magnesium dihalide support under conditions such that the compound is preactivated or becomes activated.

Claim 17 is illustrative of the claims on appeal:

Polymerization catalysts
obtained by mixing

(A) a catalyst-forming component which is a hydride or organometallic compound of a metal belonging to Groups I to III inclusive of the Mendelyeev Periodic System

with

(B) a catalyst-forming component which is the product obtained by dispersing a titanium compound having the general formula

$$(NR_4)_p Ti_m X_{(n.m)+p}$$

in which the Rs represent hydrogen or hydrocarbon radicals; the $X_{(n.m)}$ substituents are halogen atoms or in part OR' groups in which R' is an organic radical; n is the titanium valency and m and p are the whole numbers 1, 2 or 3; on a carrier essentially consisting of an anhydrous magnesium dihalide in an active form characterized in that in its X-rays spectrum the diffraction line of highest intensity that appears in the X-rays spectrum of the normal magnesium dihalide decreases in intensity and in its place a halo appears.

Also claimed is the method of preparing the catalysts and the process of polymerization using the claimed catalysts. It is asserted that unexpected results are obtained when the titanium compound is combined with an activated anhydrous magnesium dihalide which serves as a support for the titanium compound.

### B. *The Commonly-Owned Applications and Patent*

Appellants' application (the applicants are Longi, Giannini and Mazzocchi) has been assigned to Montedison S.p.A., an Italian company based in Milan, Italy. The

assignee also owns the following related applications: Serial Nos. 267,624 (Mayr I) (applicants Mayr, Susa, and Giachetti); 524,380 (Galli) (applicants Galli, Susa, Di Drusco);[1] and 622,550 (Mayr II) (applicants Mayr, Susa, and Giachetti). Mayr I claims polymerization catalysts obtained by mixing a hydride or organometallic compound with a product obtained by contacting a titanium or vanadium halide in which the metal has a valence lower than 4, with an active form of anhydrous magnesium dihalide. Specifically, catalysts in which the transition metal halide is titanium trichloride ($TiCl_3$) are claimed. Also claimed is the method of preparing the catalyst by cogrinding the titanium halide with an anhydrous magnesium dihalide, thereby converting the dihalide to an active form.

Galli claims polymerization catalysts obtained by mixing (a) the product obtained by contacting a titanium *oxyhalide* with a support composed, as in Mayr I, of an anhydrous magnesium dihalide in an active form, with (b) a Group I, II, or III hydride or organometallic compound. As in Mayr I, the dihalide is either preactivated or "cogrinded" with the titanium compound, converting the dihalide to an active form.

On November 3, 1981, a patent was granted on the Mayr II application (filed October 14, 1975), entitled "Catalysts for the Polymerization of Olefins," U.S. Patent No. 4,298,718. The Mayr II patent claims a catalyst with an active magnesium dihalide support, obtained in the same manner as claimed in Mayr I and Galli. Here, a titanium *tetrahalide* ($TiCl_4$, for example) is combined with the support magnesium dihalide and mixed with a hydride or organometallic compound. Claim 11 is illustrative:

Polymerization catalysts prepared by mixing

(a) a supported catalyst-forming component the essential support material of which is an active magnesium dihalide, said component being obtained by cog-

rinding a titanium tetrahalide with a normal, non-active anhydrous magnesium dihalide to obtain a component (a) the magnesium dihalide support material of which is activated and characterized in that it has one or both of the following properties (1) its X-rays powder spectrum does not show the most intense diffraction lines as they appear in the X-rays powder spectrum of normal, non-active magnesium dihalide, the spectrum of the activated magnesium dihalide showing a broadening of said most intense diffraction lines; (2) the surface area of the activated magnesium dihalide is greater than 3 $m^2/g$, with

(b) a hydride or organometallic compound of a metal belonging to one of Groups I to III inclusive of the Mendelyeev Periodic Table.[2]

Considered together, the three other applications all claim catalysts obtained by mixing the product of a titanium compound and an activated magnesium dihalide with an organometallic compound. Mayr I claims a catalyst composed in part of a titanium halide with a valence less than 4 (*i.e.*, $TiCl_3$); Galli a titanium oxyhalide; and Mayr II a titanium tetrahalide. The application in issue claims catalysts obtained in a similar manner as Mayr I, Galli, and Mayr II, except that a titanium compound with a quaternary nitrogen group ($NR_4$) is claimed.

### C. *The Prior Art*

The prior art references relied on by the examiner are:

| | | |
|---|---|---|
| Hewett | 3,238,146 | March, 1966 |
| Argabright | 3,069,446 | Dec., 1962 |
| Luft | 2,981,725 | April, 1961 |
| Nowlin | 2,918,458 | Dec., 1959 |

Hewett's patent, entitled "Catalysts and their Preparation," discloses the use of metal-containing catalysts, including titanium catalysts, for aiding polymerization of unsaturated monomers. The disclosure

---

1. Serial Nos. 267,624 and 524,380 have both been abandoned in favor of continuation applications Serial Nos. 190,375 and 151,828, respectively.

2. This claim is set forth for purposes of comparison to the claims in the instant application.

teaches the use of metal salts such as magnesium chloride, as carriers for the catalysts. Luft's patent, entitled "Process for Polymerizing Olefins," teaches the use of promotors in conjunction with organometallic catalysts to improve the polymerization of ethylene. The use of an inert organic carrier, such as magnesium chloride, for the promotor and catalyst is specifically disclosed as useful in that it increases the accessible surface area of the catalyst, and thus lowers the amount of catalyst required to produce a given quantity of ethylene.

Nowlin's patent, entitled "Process and Catalyst for Production of Olefin Polymers," discloses the use of a polymerization catalyst comprised of an ammonium radical, a titanium, and a halogen, combined with a hydride or organometallic compound. The disclosed complex metal halide compounds include ammonium chlorotitonate ($(NH_4)_2TiCl_6$). The Argabright patent, entitled "Titanium Halide Derivatives", also teaches that nitrogen-containing titanium halide derivatives combined with an electron donor molecule perform as active catalysts. Thus, all together, the four references disclose that the titanium compounds claimed in the instant and prior applications are well-known components of Ziegler-catalysts.

### D. *The Examiner's Rejection*

On February 10, 1981, the examiner finally rejected the claimed subject matter in Longi's application as unpatentable on the ground of estoppel, reasoning that the titanium species claimed were either compounds known to be used in forming Ziegler-type catalysts or were obvious in light of the prior art. The claims were further rejected by the examiner as unpatentable over the claims of Mayr I, Galli and Mayr II in view of Nowlin, Argabright, Hewett and Luft, on the grounds of double patenting. The examiner suggested that the applicants might overcome this rejection by filing a disclaimer or having the patents issue on the same date.

Instead, appellants filed a declaration by Enrico Albizzati, a Montedison biologist researching catalysts used for olefin polymerization, which purports to outline the unexpected results obtained from the applicants' claimed invention. By comparing the results of four tests which he supervised, Albizzati concluded that the "compound $(CH_3)_4NTi_2Cl_9$ [claimed in the instant application] used alone and in not supported form [sic] (Test 2) is a catalytic component having very low activity, as compared to $TiCl_3$ ARA [claimed in Mayr I] used in Test 3 or $TiCl_4$ [claimed in Mayr II] used in Test 4." The examiner, however, found the Albizzati declaration unpersuasive and in his final rejection, based on the grounds of estoppel and "obviousness type double patenting," stated:

> It is certainly not surprising that the omission of the magnesium dichloride results in a catalyst that is far less active than the analogous catalyst based on titanium tetrachloride or titanium trichloride, i.e., Ziegler-type catalyst based on titanium tetrachloride or titanium trichloride were [sic] known to be more active than those of Nowlin et. al. The catalyst of Nowlin et. al., thus, would be a prime candidate for the activation technique described in the above application in view of its very low activity.

### E. *Proceedings Before the Board*

The Board did not believe that the examiner had established a proper basis for a rejection based on estoppel, and accordingly reversed as to this ground.[3] As to the second ground, the Board stated that the double patenting rejection would be better characterized as a rejection based upon 35 U.S.C. § 103 taken with § 102(g). Then, in its opinion on reconsideration, the Board said that the "rejection is based on obviousness under section 103." Appeal was then taken to this court. In oral argument before this court, the Solicitor stated that the Board's decision could not be defended as based upon § 103 in light of § 102(g), but could be sustained on the grounds of dou-

---

3. There is no issue on this appeal relating to estoppel.

ble patenting of the obviousness type. In light of these conflicting statements, this court held that it could not determine the validity of the Board's decision, and accordingly vacated and remanded. *In re Longi*, 732 F.2d 167 (Fed.Cir.1984) (unpublished).

On remand, the Board affirmed the rejection based upon double patenting of the obviousness type. The Board stated that such a rejection was supported by prior Court of Customs and Patent Appeals decisions even though Section 804 of the Manual of Patent Examining Procedure (MPEP) and a Commissioner's Notice (834 O.G. 1615, January 31, 1967) both state that " 'double patenting' rejections should not be applied to situations involving commonly owned cases of different inventive entities." The Board went on to say that the cited prior art patents indicate that the titanium compound set forth in the instant application may be effectively used in conjunction with the well-known Ziegler polymerization catalyst. Further, the Board said, it would be an obvious expedient and merely a matter of choice to use any of these known titanium compounds in conjunction with the activated magnesium dihalide support and to combine the resulting complex with the main catalyst material. Accordingly, the claimed subject matter was rejected as unpatentable over the claims in the commonly-owned applications in light of the four prior art patents.

## II.

## DOUBLE PATENTING

■ In considering the correctness of the Board's decision, we review any underlying facts found by the Board under the clearly erroneous standard. The Board's ultimate conclusion of obviousness is a question of law determined from these facts, and will be reviewed for correctness or error as a matter of law.[4] *In re De*

*Blauwe*, 736 F.2d 699, 222 USPQ 191 (Fed. Cir.1984). Before discussing the correctness of the Board's conclusions, a brief review of the general doctrine of double patenting is appropriate.

### A. *Double Patenting—In General*

■ A double patenting rejection precludes one person from obtaining more than one valid patent for either (a) the "same invention," or (b) an "obvious" modification of the same invention. A rejection based on double patenting of the "same invention" type finds its support in the language of 35 U.S.C. § 101, which states that "Whoever invents or discovers any new and useful process ... may obtain *a* patent therefor...." (Emphasis added.) Thus, the term "same invention," in this context means an invention drawn to identical subject matter. *In re Vogel*, 422 F.2d 438, 57 C.C.P.A. 920, 164 USPQ 619 (1970).

■ On the other hand, a rejection based upon double patenting of the *obviousness type* ((b), *supra*) is a judicially created doctrine grounded in public policy (a policy reflected in the patent statute) rather than based purely on the precise terms of the statute. The purpose of this rejection is to prevent the extension of the term of a patent, even where an express statutory basis for the rejection is missing, by prohibiting the issuance of the claims in a second patent not patentably distinct from the claims of the first patent. *Carman Industries Inc. v. Wahl*, 724 F.2d 932, 220 USPQ 481 (Fed.Cir.1983); and *In re Thorington*, 418 F.2d 528, 57 C.C.P.A. 759, 163 USPQ 644 (1969), *cert. denied*, 397 U.S. 1038, 90 S.Ct. 1356, 25 L.Ed.2d 649 (1970). Fundamental to this doctrine is the policy that:

> The public should ... be able to act on the assumption that upon the *expiration* of the patent it will be free to use not

---

**4.** We note that the Board did not make the instant rejection under § 103. However, a double patenting of the obviousness type rejection is "analogous to [a failure to meet] the non-obviousness requirement of 35 U.S.C. § 103," except that the patent principally underlying the double patenting rejection is not considered prior

art. *In re Braithwaite*, 379 F.2d 594, 600, n. 4, 54 C.C.P.A. 1589, 1597, n. 4, 154 USPQ 29, 34 (1967). Therefore, our analysis concerning the correctness of the Board's decision in the instant case parallels our previous guidelines for a § 103 rejection. *See, e.g., In re De Blauwe*, 736 F.2d 699, 222 USPQ 191 (Fed.Cir.1984).

only the invention claimed in the patent but also modifications or variants which would have been *obvious* to those of ordinary skill in the art at the time the invention was made, taking into account the skill of the art and prior art other than the invention claimed in the issued patent. (Emphasis in original.)

*In re Zickendraht*, 319 F.2d 225, 232, 50 C.C.P.A. 1529, 1536, 138 USPQ 23, 27 (1963) (Rich, *J.*, concurring). Under that facet of the doctrine of double patenting, we must direct our inquiry to whether the claimed invention in the application for the second patent would have been obvious from the subject matter of the claims in the first patent, in light of the prior art. *Carman Industries*, 724 F.2d at 940, 220 USPQ at 487.[5]

■ Appellants argue that clear lines of division among the respective groups of claims in the several applications have been maintained. They conclude that because there are no "conflicting claims" and the claims in these applications do not "overlap," double patenting does not exist. However, appellants confuse the difference between the two types of double patenting. Overlapping and conflicting claims are considerations more significant in a § 101 "same invention" double patenting analysis. These are not "significant or controlling" factors in an obviousness type double patenting analysis where a rejection may be applied to "clearly distinct inventions." *In re Jentoft*, 392 F.2d 633, 640, 55 C.C.P.A. 1026, 1036, 157 USPQ 363, 369 (1968); *see also In re Siu*, 222 F.2d 267, 42 C.C.P.A. 864, 105 USPQ 428 (1955). This type of double patenting rejection has been applied where there are separate inventions, each of which is considered patentable over the prior art absent the first patent. *In re Bowers*, 359 F.2d 886, 53 C.C.P.A. 1590, 149 USPQ 571 (1966). Thus, appellants'

argument that the claimed inventions do not overlap is irrelevant.

■ Appellants also maintain that the entire doctrine of double patenting of the obviousness type should not apply to commonly-owned applications with different inventive entities. A rejection based upon such a doctrine, appellants say, is unduly restrictive and discourages group research. Moreover, each inventor in a research department should be entitled to separate patents for his or her own independent contribution to the basic objective of the overall research project. Such a broad position has been previously rejected, and it is inconsistent with both our precedents and recent legislation.

Many times our predecessor court, the Court of Customs and Patent Appeals, has treated commonly-owned applications by different inventors as though they were filed by the same inventor, and then relied upon the doctrine of double patenting of the obviousness type to deny a second patent on subject matter not patentably distinct from the claims of the first patent. *See In re Newton*, 414 F.2d 1400, 56 C.C.P.A. 1463, 163 USPQ 35 (1969); *In re Frilette*, 412 F.2d 269, 56 C.C.P.A. 1262, 162 USPQ 163 (1969); *In re Rogers*, 394 F.2d 566, 55 C.C.P.A. 1092, 157 USPQ 569 (1968); *In re Bowers*, 359 F.2d 886, 53 C.C.P.A. 1590, 149 USPQ 570 (1966); *In re Borcherdt*, 197 F.2d 550, 39 C.C.P.A. 1045, 94 USPQ 175 (1952); and *In re Borg*, 392 F.2d 642, 55 C.C.P.A. 1021, 157 USPQ 359 (1968). In fact, the appellant in *In re Rogers* made an argument similar to the one the present appellant makes here. In that case, Rogers asserted that the obviousness type double patenting rejection was "distressing" to corporate practitioners and did not take into account the considerable exchange of information between inventors. The result, as the argument goes, would be that a corporation would find itself in a

---

5. In *Carman Industries,* involving a design patent, we added that a second patent would also be invalid if the *first* patent's claims would have been obvious from the claims of the *second* patent. Appellants have neither asserted that this additional condition is lacking in the in-

stant case, nor that the requirement which was set forth in the design-utility patent situation even applies to the instant situation. We need not, therefore, address either additional issue here.

"box" because patent protection for both inventions would not be possible.

■■■■ As we declared in that case, appellants, and those in like situations, are not in an inescapable "box." *In re Rogers*, *supra*, 394 F.2d at 571, 55 C.C.P.A. at 1099, 157 USPQ at 573. A patent may still issue if an applicant faced with such a rejection were to file a terminal disclaimer under 35 U.S.C. § 253, disclaiming "any terminal part of the term ... of the patent," thereby guaranteeing that the second patent would expire at the same time as the first patent. It is well-established that a common assignee is entitled to proceed with a terminal disclaimer to overcome a rejection based on double patenting of the obviousness type. *In re Bowers*, *supra*, 359 F.2d 886, 53 C.C.P.A. 1590, 149 USPQ 571. Since the second patent would expire simultaneously with the first, this use of a terminal disclaimer is consistent with the policy that the public should be free to use the invention as well as any obvious modifications at the end of the patent's term. *In re Robeson*, 331 F.2d 610, 614, 51 C.C.P.A. 1271, 1275, 141 USPQ 485, 486 (1964).

■■■■ Appellants respond to this suggested use of a disclaimer by citing MPEP [Manual of Patent Examining Procedure] § 804.03 for the proposition that terminal disclaimers are not applicable to commonly-owned applications made by different inventive entities. The Solicitor also candidly points us to the related Commissioner's Notice on Double Patenting (834 O.G. 1615, January 9, 1967) which states in relevant portion:

The term 'double patenting' is properly applicable only to cases involving two or more applications and/or patents of the same inventive entity and should not be

applied to situations involving commonly owned cases of different inventive entities.

Appellants argue, therefore, that a terminal disclaimer would be ineffective. However, this court has never approved this guideline, and such a requirement is inconsistent with many of our predecessor's decisions. *See, e.g., In re Rogers*, 394 F.2d at 567, n. 4, 55 C.C.P.A. at 1094, n. 4, 157 USPQ at 571 (citations omitted); and *In re Frilette*, 412 F.2d 269, 56 C.C.P.A. 1262, 162 USPQ 163 (1969). In fact, the examiner here invited appellants' assignee, which declined, to file a terminal disclaimer in order to overcome the rejection. We have held that the Double Patenting Notice, *supra*, is only a procedural memorandum which merely sets forth guidelines for the Patent and Trademark Office, and that where those guidelines are not even applied, as in the instant case, they can have no bearing on the outcome. *In re Newton*, 414 F.2d 1400, 56 C.C.P.A. 1463, 163 USPQ 351 (1969).[6] In short, appellants' argument in this regard is meritless.

As a last resort, appellants argue that under the recent legislative changes to 35 U.S.C. § 103,[7] the "tenuous and untenable" double patenting rejection is unsupportable in light of the "fierce spotlight of the now-so-clearly revealed Congressional intent."[8] To respond to this contention, we inquire whether the recent legislation changes or in any way affects the doctrine of double patenting of the obviousness type.

Certainly the mere words of the new statute do not compel the elimination of that type of double patenting objection. The objective of this amendment was to deal with citation of a co-worker's research development, *see In re Bass*, 474 F.2d 1276, 59 C.C.P.A. 1342, 177 USPQ 178 (1973) and

---

6. As we point out *infra*, the PTO has partially withdrawn the Notice of January 9, 1967.

7. This section now includes the following:
 Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was

made, owned by the same person or subject to an obligation of assignment to the same person.
Patent Law Amendments, Pub.L. No. 98–622, § 104, 98 Stat. 3385 (1984).

8. Appellants also moved to remand to the Board in light of these recent legislative changes. For reasons explained *infra*, this motion is denied.

*In re Clemens,* 622 F.2d 1029, 206 USPQ 289 (CCPA 1980), not with double patenting. *See* 130 CONG.REC. H10925 (October 1, 1984); PATENT LAW AMENDMENTS ACT of 1984, Pub.L. No. 98–622, § 104, 98 Stat. 3385, *reprinted in* 1984 U.S.Code Cong. & Ad.News 5827, 5833. Indeed, the present problem is definitively resolved by important legislative history of that legislation. Of particular interest are Congressman Kastenmaier's remarks, incorporated into the Senate Report, on the effect the legislation would have on the judicially created double patenting doctrine:

> The Committee expects that the Patent and Trademark Office will reinstitute in appropriate circumstances the practice of rejecting claims in commonly owned applications of different inventive entities on the ground of double patenting. This will be necessary in order to prevent an organization from obtaining two or more patents with different expiration dates covering *nearly identical* subject matter. In accordance with established patent law doctrines, double patenting rejections can be overcome in certain circumstances by disclaiming the terminal portion of the term of the later patent, thereby eliminating the problem of extending patent life. (Emphasis added.)

130 CONG.REC. H10525 (daily ed. October 1, 1984); SENATE COMMITTEE ON THE JUDICIARY, PATENT LAW AMENDMENTS ACT OF 1984, S.Rep. 98–663, 98th Cong., 2d Sess. 8 (1984), *reprinted in* 1984 U.S.Code Cong. & Ad.News 5834 (section-by-section analysis of the Patent Law Amendments of 1984). Although it would seem clear from this statement that the recent amendment was not intended to affect the doctrine of double patenting, but seems rather to reaffirm its viability, appellants argue otherwise. They assert that in referring to "nearly identical subject matter," Mr. Kastenmaier was coining a new term of art different from the established test utilized in the obviousness type double patenting doctrine.

There is no substantial support for this argument. As we have previously discussed, double patenting of the same invention type under § 101 questions whether the respective claims cover "identical" subject matter. In referring to "nearly identical subject matter," we believe Congressman Kastenmaier and the Committees were referring to subject matter which "would have been obvious" from the subject matter of the claims of the first patent, in accordance with the established existing doctrine of double patenting of the obviousness type. That the doctrine was left unaffected but reaffirmed is further supported by the "PTO's Initial Guidelines as to Implementation of Patent Law Amendments" which state:

> (14) Double patenting rejections may now be made in applications based on commonly owned patents of different inventive entities and double patenting rejections of the obviousness type can be overcome by terminal disclaimers.

> \* \* \* \* \* \*

> (16) The Commissioner's Notice of January 9, 1967, "Double Patenting," 834 O.G. 1615 (Jan. 31, 1967) is withdrawn to the extent that it does not authorize a double patenting rejection where different inventive entities are present.

*Reprinted in* 29 BNA's *Pat.T.M. & Copy.J.* 214 (December 20, 1984). For these reasons, we hold that double patenting of the obviousness type, as applied to commonly-owned applications made by different inventive entities, is still a viable doctrine.

### B. *The Rejection in This Case*

The narrower question in the current case is whether, in the absence of a terminal disclaimer, the Board erred in affirming the examiner's determination that the claimed subject matter is merely an obvious modification of the invention claimed in the commonly-owned applications and the Mayr II patent, in light of the four prior art references. Of course, a double patenting rejection presupposes a patent. Thus, we start by examining the claims of the Mayr II patent, and by assessing the prior art references in order to ascertain whether the PTO made out a *prima facie* case of

obviousness. Then we must look to the Albizzati declaration to determine whether the Board correctly concluded that this sole rebuttal evidence was insufficient to overcome the *prima facie* case. *See In re Piasecki*, 745 F.2d 1468, 223 USPQ 785 (Fed.Cir.1984).

 The basic concept underlying the claims in all the commonly-owned applications and patent is the formation of a highly active Ziegler-type catalyst by first combining a titanium compound with an activated form of magnesium halide. The particular species of titanium compound can be selected from titanium trihalides (Mayr I application), titanium oxyhalides (Galli application), or titanium tetrahalides (Mayr II patent). The difference between the claims in the instant application, on the one hand, and the Mayr II claims, on the other, is the recitation of the *nitrogen*-containing titanium compound in the present application.[9] Thus, the question becomes whether the prior art discloses to one of ordinary skill in the art that magnesium halides in "active form" would have utility with the nitrogen-containing titanium compound embodied in the current invention.

As taught by the four prior art references, all the claimed species of titanium compounds, as well as the nitrogen-containing titanium compounds of the claims now before us, are well-known "titanium compound" components of Ziegler-type catalysts. The compounds were correctly considered by the examiner to be qualitative equivalents. As the Board aptly noted, qualitative equivalence means that the active Ziegler-type catalysts could be prepared from these titanium compounds with the appropriate organometallic reducing agents (*i.e.*, active magnesium chloride). More specifically, Nowlin and Argabright teach the use of such nitrogen-containing titanium compounds. Thus, with knowledge that an "activated magnesium halide" would increase the catalytic activity of a Ziegler-type catalyst prepared with the species of titanium compound claimed in the commonly-owned patent, it would have been obvious to one of ordinary skill in the art that the same effect would probably occur by using a nitrogen-containing titanium compound.

Appellants retort that the various species of titanium compounds are significantly different in structure from the nitrogen-containing titanium catalyst. But the prior art patents suggest that the Ziegler-type catalyst carrier (for example, magnesium halide) would have utility with *each* type of titanium compound. Thus, the fact that the nitrogen-containing compounds disclosed in Nowlins and Argabright might be different structurally would not deter one of ordinary skill in the art from combining the compound with the activated magnesium halide claimed in the commonly-owned Mayr II patent, for example. Accordingly, a *prima facie* case of obviousness-type double patenting was properly made.

 Contrary to appellants' arguments, the Albizzati declaration fails to provide the unexpected results necessary to rebut the *prima facie* case of obviousness. We may assume that the declaration was designed to show that the different claimed titanium species combined only with an aluminum alkyl yields an inferior catalyst, while the same species combined additionally with an active magnesium chloride support yields a highly active catalyst. However, as we have seen from the claims of the commonly-owned patent, magnesium halide in "active form" increases the effectiveness of Ziegler-type catalysts containing the titanium chloride compounds. The important point is that the declaration does not speak at all to the critical issue of whether that "active" support combined with the nitrogen based compound produced unexpected results not already obtained with other Ziegler-type catalysts such as

---

9. Appellants contend that the fact that the previous applications claimed non-nitrogen-containing titanium shows that a clear line of division has been maintained between the applications, and therefore that the instant application is pat-

entable. However, as we have seen, the fact that inventions are distinct and "non-overlapping" is not controlling when applying the obviousness type double patenting doctrine. *See In re Jentoft, supra.*

those containing the titanium chloride compounds. There is nothing to show that the results attested in the declaration were unexpected. The fact that some titanium compounds function more effectively, and that the exact magnitude of the increased catalytic activity might not be predictable, does not preclude a conclusion of obviousness. Only a reasonable expectation of success, not absolute predictability, is necessary for a conclusion of obviousness. *See In re Lamberti,* 545 F.2d 747, 192 USPQ 278 (CCPA 1976), and *In re Clinton,* 527 F.2d 1226, 188 USPQ 365 (CCPA 1976).

Accordingly, the Board did not err in holding the claim subject matter unpatentable for double patenting of the obviousness type.

AFFIRMED.