**In re Daniel BARTFELD, Shmaryahu Blumberg, Marian Gorecki, Dan Hadary and Menachem Zeevi.**

No. 90–1376.

United States Court of Appeals, Federal Circuit.

Feb. 20, 1991.

John P. White, Cooper & Dunham, of New York City, argued, for appellants. With him on the brief was Thomas G. Carulli.

Fred E. McKelvey, Sol., Office of the Sol., Arlington, Va., argued, for appellee.

With him on the brief were Richard E. Schafer, Teddy S. Gron, and Lee B. Barrett, Associate Solicitors.

Before RICH, MAYER, and RADER, Circuit Judges.

RICH, Circuit Judge.

Bartfeld et al. (hereinafter "Bartfeld") appeal from the March 30, 1990 decision of the Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (Board), reported at 16 USPQ2d 1714, affirming the PTO examiner's rejection of claims 1–12 and 14–45 of application Serial No. 06/734,450 (the '450 application),[1] titled "Method for Recovering Purified Growth Hormones From Genetically Engineered Microorganisms," as obvious under 35 U.S.C. § 103. As detailed below, two rejections are appealed, one being "provisional" in nature. We decline to address the propriety or merits of the "provisional" rejection,[2] but *affirm* the Board with respect to the remaining rejection.

## BACKGROUND

The '450 application is one of several related applications and patents, all assigned to Bio–Technology General Corp., which deal with the results of that company's research in the area of growth hormones. Each related application supplements the same basic disclosure.

The claims on appeal are directed to a method for recovering a purified eucaryotic growth hormone or an analog thereof from a bacterial cell. The growth hormone or analog thereof is produced in the bacterial cell via expression of a DNA sequence encoding the hormone or analog.[3]

---

1. The '450 application, filed May 15, 1985, is a continuation of application Serial No. 06/644,435, filed August 27, 1984.

2. Before the Board, Bartfeld challenged the propriety of the PTO's "provisional" § 102(e)/§ 103 rejection practice, wherein the PTO examiner bases a rejection under 35 U.S.C. § 103 upon a patent application that will become prior art under 35 U.S.C. § 102(e) only if issued as a patent. By contrast, in his brief to this court, Bartfeld merely alluded to the issue by stating: "Even assuming, *arguendo*, the propriety of the

provisional § 102(e)/§ 103 rejection in this case...." Because it is unclear whether Bartfeld intended to raise the issue for our review, we decline to consider the propriety of the PTO's "provisional" rejection practice. Nor do we reach the merits of the instant "provisional" rejection, in light of our disposition of this case on the basis of the remaining non-provisional rejection.

3. Claim 1 is representative for our purposes:
1. A method for recovering a purified eucaryotic growth hormone or analog thereof from

The PTO examiner initially rejected the claims on appeal as obvious under 35 U.S.C. § 102(e)/§ 103[4] in view of commonly-assigned application Serial No. 06/514,188 (the '188 application). The rejection was "provisional" in the sense that the '188 application had not yet issued as a patent.[5]

Bartfeld (through his assignee, Bio–Technology General) then sought to overcome the § 102(e)/§ 103 rejection by filing a terminal disclaimer. More specifically, Bartfeld's assignee disclaimed that part of the term of any patent to issue from the '450 application which would extend beyond the expiration date of the commonly-assigned, co-pending '188 application. The examiner refused to give effect to the terminal disclaimer, however, because PTO practice does not permit the use of a terminal disclaimer to overcome § 102(e)/§ 103 rejections. *See Manual of Patent Examining Procedure* § 804.02.

When the '188 application thereafter became abandoned, the examiner instituted the following two rejections, which are the basis of this appeal:

(1) A rejection of claims 1–12 and 14–45 under 35 U.S.C. § 102(e)/§ 103 as obvious in view of commonly-assigned U.S. Patent No. 4,871,835 to Aviv et al. (Aviv)[6] and U.S. Patent No. 4,560,649 to Saxena et al. (Saxena); and

(2) A "provisional" rejection of claims 1–12 and 14–45 under 35 U.S.C. § 102(e)/§ 103 as obvious in view of commonly-assigned, co-pending patent application Serial No. 07/159,526

---

a bacterial cell in which the eucaryotic growth hormone or analog has been produced by means of expression of a DNA sequence encoding the hormone or analog which comprises the following steps:
(a) suspending the bacterial cell or fragments thereof in a fermentation mash or in a buffered solution at a neutral pH;
(b) disrupting the cell wall of the bacterial cell or fragments thereof to produce a lysate;
(c) separating a precipitate containing particulate insoluble material from the lysate;
(d) preparing a suspension of the separated precipitate in an appropriate neutral pH buffer solution;
(e) treating the suspension to effect contact between liquid and solids;
(f) separating partially or completely precipitated material from the liquid-solids contacted suspension;
(g) solubilizing the separated precipitated material containing the hormone or analog in sufficient amount of water and adjusting the pH to an alkaline pH so as to form a solution;
(h) separating the solubilized hormone or analog from other cellular components by ultrafiltration under conditions so as to produce an ultrafiltrate containing the hormone or analog and a retentate; and
(i) treating the solubilized hormone or analog so as to further purify and concentrate the hormone or analog and thereby recover purified hormone or analog.

4. 35 U.S.C. § 102(e) provides:
A person shall be entitled to a patent unless
. . .
    (e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent. . . .
The first paragraph of 35 U.S.C. § 103 provides:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made. Though not anticipatory, a reference that would otherwise qualify as prior art under 35 U.S.C. § 102(e) may form the basis of an obviousness rejection under 35 U.S.C. § 103; hence, "§ 102(e)/§ 103" rejections. The effective date of the § 102(e) reference is the application filing date, not the patent issuance date. *See Hazeltine Research, Inc. v. Brenner,* 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304, 147 USPQ 429 (1965).

5. Section 706.02 of the *Manual of Patent Examining Procedure* authorizes the making of "provisional" rejections under 35 U.S.C. § 102(e)/§ 103. Examiners may "provisionally reject claims not patentably distinct from the disclosure in a co-pending application having an earlier U.S. filing date and also having either a common assignee or a common inventor." *Id.* The rejection is termed "provisional" because the application must eventually issue as a patent to be a true § 102(e) reference.

6. Aviv was a commonly-assigned, co-pending application (Serial No. 06/691,230, filed January 14, 1985, a continuation-in-part of the '188 application) which issued as a patent during prosecution of the instant application. Once Aviv had issued, the examiner modified his first "provisional" § 102(e)/§ 103 rejection to a standard § 102(e)/§ 103 rejection.

(the '526 application), filed February 23, 1988 (a continuation of the '188 application) and Saxena.

Noting that both Aviv and the '526 application contained the subject matter of the abandoned '188 application, the examiner reasoned that both references were available as § 102(e) prior art because they had earlier filing dates than the '450 application and different inventive entities (though common ownership). Both references disclosed a method of recovering a purified eucaryotic growth hormone which parallels that set forth in the claims on appeal, with the sole exception of not·disclosing ultrafiltration step (h). Saxena disclosed the use of ultrafiltration in a method for concentrating human luteinizing hormone or human chorionic gonadotropin receptors (indicators of ovulation and fertilization, respectively). In view of Saxena's disclosure, the examiner concluded that an art worker would have found it obvious to use an ultrafiltration step in the purification methods disclosed in Aviv and the '526 application.

On appeal to the Board, Bartfeld maintained that appropriate terminal disclaimers should be effective to overcome the § 102(e)/§ 103 rejections, as they are in obviousness-type double patenting situations. In support of his position, Bartfeld cited (1) the legislative history underlying the 1984 amendment to 35 U.S.C. § 103, and (2) this court's holding in *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed.Cir.1985) (obviousness-type double patenting rejection still applies to commonly-owned applications with different inventive entities, but may be overcome by appropriate terminal disclaimer). The Board disagreed with Bartfeld on both grounds, and affirmed the

rejections on the merits. This appeal followed.

### DISCUSSION

In support·of his position that the filing of a terminal disclaimer should be effective to overcome a § 102(e)/§ 103 rejection, Bartfeld relies on the public policy which he alleges is implicit in Congress' 1984 amendment of 35 U.S.C. § 103. Section 103 of The Patent Law Amendments Act of 1984, Pub.L. No. 98–622, 98 Stat. 3383 (1984), added to 35 U.S.C. § 103 its second paragraph, which precludes citation as prior art of commonly-owned § 102(f) or (g) subject matter developed by another person.[7] Congress did so, Bartfeld submits, to prohibit the use of "secret" prior art in making obviousness determinations; it wanted to foster free exchange of ideas and concepts at universities and corporate research centers. Bartfeld contends that the commonly-owned Aviv patent [at least while it was still a pending application] is precisely the type of "secret" prior art Congress intended to eliminate for purposes of obviousness analysis.

Bartfeld also emphasizes the problems associated with the fairly limited options available to an applicant attempting to overcome a § 102(e)/§ 103 rejection.[8] Without the availability of terminal disclaimers, Bartfeld urges, corporate assignees are routinely forced to use burdensome and costly procedures such as abandoning both applications and refiling a combined application.

We are not persuaded by these lines of argument, for they contradict the plain language of 35 U.S.C. § 103. The second paragraph of § 103 is expressly limited to subject matter "developed by another per-

---

**7.** The second paragraph of 35 U.S.C. § 103 provides:

Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

**8.** As set forth at *Manual of Patent Examining Procedure* § 2153, those options are the following:

(1) Argue patentability over the earlier filed application,

(2) Consider the possibility of filing a 37 CFR 1.131 affidavit to swear behind the *filing date* of the earlier application, and

(3) Consider abandoning *both* applications and combining the subject matter into a single *continuation-in-part* application.

(Emphases in original.)

son, which qualifies as prior art *only under subsection (f) or (g) of section 102.*" (Emphasis added.) We may not disregard the unambiguous exclusion of § 102(e) prior art from the statute's purview. *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) ("[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'") (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). Further, the legislative history of Pub.L. No. 98–622 indicates that Congress intended to carefully limit the scope of the amendment to 35 U.S.C. § 103. The section-by-section analysis of the amendment states that "if the subject matter qualifies as prior art under any other subsection—e.g., subsection 102(a), (b) *or (e)*—it would *not* be disqualified as prior art under the amendment to section 103." 130 *Cong.Rec.* H 10525, H 10527, *reprinted in* 1984 *U.S.Code Cong. & Admin.News* 5827, 5833 (emphases added).

As the second prong of his argument, Bartfeld would have us conclude that this court's decision in *Longi* supports his position. The *Longi* court characterized an obviousness-type double patenting rejection as "analogous" to a § 103 rejection. *Longi,* 759 F.2d at 892 n. 4, 225 USPQ at 648 n. 4. Therefore, Bartfeld concludes, use of a terminal disclaimer should be allowed to overcome a § 102(e)/§ 103 rejection, analogously to the double patenting situation.

We find Bartfeld's citation of *Longi* inapposite. *Longi* dealt with an obviousness-type double patenting rejection, not a § 102(e)/§ 103 rejection. The court's remark that the two rejections were "analogous" referred to the nature of the inquiry "whether the claimed invention in the application for the second patent would have been obvious from the subject matter of the *claims* in the first patent, in light of the prior art." *Id.* at 893, 225 USPQ at 648

(emphasis added). The obviousness-type double patenting and § 102(e)/§ 103 rejections may be analogous in the sense that an obviousness analysis is performed in both cases, but they are not analogous in terms of *what* is analyzed.

Bartfeld's attempt to extend *Longi* beyond its facts evinces a failure to recognize this basic difference between obviousness-type double patenting rejections and standard obviousness rejections: Double patenting depends entirely on what is *claimed* in an issued patent. Obviousness relates to what is disclosed (whether or not claimed) in a prior art reference (whether or not a patent). A prior art reference that renders claimed subject matter obvious under 35 U.S.C. § 103 does not necessarily create an obviousness-type double patenting situation.[9] Our precedent recognizes this fundamental distinction. *See, e.g., In re Ornitz,* 376 F.2d 330, 335, 153 USPQ 453, 458 (CCPA 1967) ("It is basic patent law that claims of a patent may dominate those of an application yet that is not necessarily determinative of whether the invention defined in the application is *obvious* in view of the teachings set forth in the prior art patent."); *In re Bowers,* 359 F.2d 886, 891 n. 7, 149 USPQ 570, 575 n. 7 (CCPA 1966) ("Under section 103, a reference patent is available for all it fairly discloses to one of ordinary skill in the art. There is no inquiry as to what is claimed therein.").

Given this fundamental difference between obviousness-type double patenting and § 102(e)/§ 103 rejections, terminal disclaimers are neither appropriate nor available means for overcoming § 102(e)/§ 103 rejections. The purpose of a terminal disclaimer is to limit the term of a patent, not to remove a reference as prior art. *See In re Braithwaite,* 379 F.2d 594, 603, 154 USPQ 29, 36 (CCPA 1967) (Smith, J., concurring) (quoting remarks of PTO Commissioner Brenner: "if the ... claimed invention is clearly obvious in view of the teach-

---

**9.** Indeed, that is the situation here. The claims of Aviv are drawn to a polypeptide, while the claims on appeal recite a method for purification of such a polypeptide by ultrafiltration. Although the examiner concluded that the sub-

ject matter of the claims on appeal would have been obvious in view of the *disclosure* of Aviv plus Saxena, a double patenting rejection was not made.

**1454**

ings of the prior art ... then a patent should not be granted even if affidavits, terminal disclaimers, and the like are presented by the applicant, *since such papers cannot change what is obvious so it may become unobvious and therefore a patentable invention* ") (emphasis in original).

In short, a terminal disclaimer is of no use in overcoming a § 102(e)/§ 103 rejection. This court's precedent so provides. *See In re Fong*, 378 F.2d 977, 979–80 n. 1, 154 USPQ 25, 27 n. 1 (CCPA 1967) (a terminal disclaimer "cannot, of course, obviate a rejection based on obviousness in view of prior art under 35 U.S.C. § 103").

Having dispensed with Bartfeld's attempt to overcome the rejection via terminal disclaimer, we consider whether, on the merits, the subject matter of the claims on appeal would have been obvious under 35 U.S.C. § 103. Bartfeld's counsel conceded as much at oral argument, apparently preferring to stake this appeal on the terminal disclaimer argument. While a concession of obviousness on the merits effectively disposes of the issue, we have nevertheless carefully reviewed the claims on appeal, the cited references, and the Board's thorough opinion. For the reasons set forth by the Board, we agree that the subject matter of the claims would have been obvious within the meaning of 35 U.S.C. § 103.

AFFIRMED.